GLADNEY, Judge.
This action was brought by Thomas A. Teekell and Selman G. Teekell, as owners of an automobile service station, to recover rent from Glen W. Drewett, defendant herein. The complaint alleges upon a written contract of lease and avers the defendant indebted in the sum of $702.50. Judgment was asked for this amount with cancellation of the lease. Prior to trial Thomas E. Teekell died and Selman G. Teekell, having succeeded to his rights in the suit, under appropriate orders was substituted in lieu of the decedent. The case was defended on the ground that all sums due by defendant as rental under the lease were paid on May 1, 1954, except the sum of $23.25, the remittance of which was refused and later tendered in court by the defendant. After trial judgment was rendered in favor of Selman G. Teekell in the sum of $175.39. From this judgment plaintiff has appealed and defendant has answer *526 ed the appeal to this court, praying the judgment be reversed and plaintiff’s demands be rejected at his cost.
In our opinion, only one substantial issue is presented, and this involves the right of the defendant to offset against accrued rent a bill for repairs to the filling station without first calling upon the lessor to make the repairs as contemplated by Article 2694 of the LSA-Civil Code.
The record discloses that on April 20, 1950, a written act of lease was executed between Jim Anderson, as lessor, and the defendant, affecting the following described property:
“That certain automobile Service Station owned by Lessor in Section 26, Township 11 North, Range 2 East, located at the intersection of the Olla-Rosefield Highway and U. S. Highway No. 165. Said Service Station building located on the East side of Highway No. 165, together with such land surrounding said Service Station building as may be sufficient, for the proper operation of said Service Station.”
The lease provided for a minimum rental of $125 per month and such additional rental in excess thereof as one cent for each gallon of gasoline sold during the month would amount to. Other provisions of the lease have no particular bearing upon the question of responsibility for repairs.
Thomas E. Teekell and Selman G. Teek-ell became the owners of said property subject to the lease in favor of the defendant. Adjacent to the service station is a lot on which is located a cafe and tourist court. This property, also owned by Thomas E. Teekell, on June 11, 1952, by a separate written instrument was leased to Drewett. The real property covered by this lease is described as follows:
•“Lot One (1) of Block Four (4) of the Highway Subdivision of the Northwest Quarter of Southwest Quarter (NWJ4 of SWJ4) of Section Twenty-Five (25), Township Eleven (11) North, Range Two (2) East, as per plat of said Addition on file and of record in the office of the Clerk of LaSalle Parish, Louisiana, together with all buildings and improvements thereon situated or in any manner thereto belonging.”
The agreement also let certain movable property and furnishings itemized therein. The lease expressly stipulated necessary repairs to this property should be made by the lessor. Drewett assigned or sublet the cafe and tourist court to Mrs. Faye Allbrit-ton.
Some time during the latter part of the year 1953, the exact date not being made certain, the concrete apron which served the service station and was also used by customers of the cafe and tourist court, began to crack or crumble. In December it was entirely replaced by a concrete apron installed by A. L. McDonald for $304.25, upon instructions from the defendant who paid McDonald for the work. Defendant then failed to pay the rent on the service station due for the months of December, 1953, January, February, March and April of 1954, but on May 1, 1954, he forwarded to Teekell his check for $375, which check was accepted. This credit left a balance due of $327.50 and on the same date defendant tendered in payment of this balance his check for $23.25, the difference between $327.50 and the $304.25 bill paid to A. L. McDonald for repairs. Plaintiff returned this check, advising defendant by letter that it did not cover the amount due.
It is clear, we think, that the record is. bare of evidence plaintiff expressly or indirectly authorized the defendant to deduct any sum from- the rent due on the service station. The testimony as to whether the repairs which included replacing the entire concrete apron of the filling station were necessary repairs, the responsibility for which the law places upon the lessor, is not conclusive. However, it is unnecessary to *527 decide this point. It appears that from time to time the concrete apron began to crack and crumble and this condition became progressively worse over a period of several months. About a month before the work was actually commenced, Drewett began to discuss with Mr. McDonald the repairing of the apron. This occurred after a heavy truck caused some damage to the concrete with resultant leakage of water into one of the fuel storage tanks. We find, however, this evidence does not indicate the existence of such an emergency that Drewett was deprived of an opportunity to inform Teekell of the condition of the concrete.
Mrs. Allbritton testified she discussed with Mr. Drewett whether he or Mr. Teek-ell would pay for the replacing of the concrete apron and she said Mr. Drewett suggested Mr. Teekell should pay for the same. Later Mrs. Allbritton attempted to telephone Mr. Teekell about the condition of the concrete, but was unable to reach him and she talked to Mrs. Teekell. No further effort was made by her to contact Mr. Teekell. What Mrs. Allbritton said to Mrs. Teekell is not mentioned. Mr. Teekell denied he received any notice as to the condition of the concrete and Mr. Drewett admitted he did not at any time notify Teekell in advance of causing the work to be done by McDonald. These facts, in our opinion, are convincing that notification was not given to Mr. Teekell in advance of the completion of the repairs. The work was done by McDonald in December and apparently the first mention to Teekell the work had been done was when it was brought to his attention May 1st. The evidence shows Teekell lived in Monroe and rarely visited the leased premises.
The aforementioned facts must determine whether the defendant was justified in deducting the repairs from the rent. In the case of Ellis v. Brenner, La.App. 1948, 34 So.2d 633, 635, a tenant was held not entitled to recover for indispensable repairs made by him on proof that one of his landlords who had theretofore authorized other repairs, was out of town when called by telephone, and that no attempt was made to get in communication with the other landlord in order to make the necessary request that repairs be made. The above authority, a decision of this court, observed that under LSA-C.C. Art. 2692, one of the obligations of the lessor is “to maintain the thing in a condition such as to serve for the use for which it is hired”, and Art. 2693 requires the lessor to make, during the continuance of the lease, all the repairs which may accidentally become necessary except those which the tenant is bound to make according to other provisions of the Code. Continuing its reference to the Civil Code the decision is based on the authoritative provisions of Article 2694, which reads:
“If the lessor do not make the nee* essary repairs in the manner required in the preceding article, the lessee may call on him to make them. If he refuse or neglect to make them, the lessee may himself cause them to be made, and deduct the price from the rent due, on proving that the repairs were indispensable, and that the price which he has paid was just and reasonable.”
In the cited case the lease contract, as is the situation in the instant case, did not derogate from the provisions of Article 2694 and the opinion went on to hold the tenant was required to make direct contact with his landlord. Judge Talia-ferro, the organ of the court in Ellis v. Brenner, then reviewed our jurisprudence, saying:
“It is true, as contended by defendants, that the jurisprudence of this state abounds in cases that strictly construe and enforce Article No. 2694 of the R.C.C. as written. The earliest case on the subject by the Supreme Court is that of Scudder v. Paulding, 4 Rob. 428, and the last one, *528 so far as we have been able to discover, is Hartz v. Stauffer, 163 La. 382, 111 So. 794. In many of these cases the court simply held that it is necessary to put the lessor in default as regards the making of necessary improvements before the lessee is warranted in doing so and then deducting the cost thereof from rent. So important to the lessor is this strict construction that the court in Shall v. Banks, 8 Rob. 168, 171, said: ‘The owners of houses would soon be ruined, if it were permitted to every tenant to make such repairs as his fancy or caprice might dictate, without notifying the owner of the property of the intention.’
“In Mullen v. Kerlec, 115 La. 783, 40 So. 46, the Court has this to say concerning said Article No. 2694, to-wit:
“ ‘The Civil Code seems plain enough that the right of the lessee to make indispensable repairs at the expense of the lessor arises only after calling on the lessor to make such repairs and after his refusal or neglect to make them. We do not think that the lessee can be permitted to anticipate the refusal of the lessor to repair and on that ground refuse to pay the rent when due.’
“No exceptions whatever have been written by the courts into said article. We can conceive of cases, however, extreme in their facts, where the ends of justice and of equity as well would be subserved by doing so, but after due consideration of the facts in the present case, we do not think it would be proper to so classify it.
“Plaintiff’s counsel forcefully argues that plaintiff was confronted with an emergency that did not admit of further delay. The facts do not entirely support this position. The temporary repairs to the system gave satisfactory service for at least a week. During this time Mr. Brenner and Mrs. Florsheim both were in Shreveport, and plaintiff made no effort to contact either of them nor Mrs. Florsheim’s son, who signed the lease for her. It is not to any extent shown that the temporary repairs to the system would not have continued to provide adequate current for another week as it had already done.”
Although the record in the instant case contains a good deal of testimony relating to the right of Mrs. Allbritton to make repairs to the cafe and tourist court, these premises were governed by a separate and distinct lease. Hence, it is immaterial that the concrete apron which served the filling station also rendered service to the cafe and' tourist court. We, therefore, find no basis for dividing the responsibility of repairing the concrete apron between the two leases. No evidence was offered to indicate any part of the concrete work was not within the terms of the lease herein sued upon by the plaintiff. Predicated upon the testimony of the defendant, the district court divided the bill of McDonald between plaintiff and the defendant. We think that he erred in doing so.
We are fully convinced that adequate notice and demand, as required by LSA-C.C. article 2694, was not made upon the lessor. This, it has been repeatedly held, is a condition which must be met before the tenant is privileged to make necessary repairs and deduct the same from his rent.
For the foregoing reasons, we are of the opinion the judgment from which appealed should be amended and as amended, affirmed. The judgment should be recast in the following terms: It is ordered, adjudged and decreed that there be judgment in favor of Selman G. Teekell and against Glen W. Drewett, in the sum of $327.50 with legal interest from judicial demand until paid, together with all costs of this suit, including costs of appeal.