286 So.2d 785 (1973)
Ollie JAMESON, wife of/and Tom Jameson
v.
EMPLOYERS INSURANCE OF WAUSAU.
No. 5927.
Court of Appeal of Louisiana, Fourth Circuit.
November 30, 1973.
Rehearing Denied January 8, 1974.
*786 Martin A. Welp, New Orleans, for plaintiffs-appellants.
Ethel H. Cohen, New Orleans, for defendant-appellee.
Deutsch, Kerrigan & Stiles, Robert E. Kerrigan, Jr., New Orleans, for Professional Maintenance of New Orleans, Inc., third party defendant-appellee.
Before GULOTTA, STOULIG and BAILES, JJ.
STOULIG, Judge.
Plaintiffs, Mr. and Mrs. Tom Jameson, have appealed a judgment dismissing their suit against Employers Insurance of Wausau, the public liability insurer of the 225 Baronne Street Building in the City of New Orleans. They seek damages for serious injuries sustained by Mrs. Jameson in a slip-and-fall accident in the main lobby of the building. It is alleged the negligence of the defendant's insured in maintaining a dangerous condition in its building, i.e. a wet and slippery terrazzo floor, was the proximate cause of the accident. The defendant denied negligence and, alternatively, pleaded the contributory negligence of Mrs. Jameson in bar of plaintiffs' recovery. The insurer filed third party pleadings against the janitorial service, Professional Maintenance of New Orleans, Inc., with whom its insured had contracted for cleaning and maintenance of the building, but in view of the result we reach, it is not necessary to set forth the details of these pleadings.
The facts are not disputed. On January 11, 1971, a damp and foggy morning, Mr. Jameson drove his wife to work and at 8 a.m., dropped her off across the street from the Gravier Street entrance of the 225 Baronne Street Building. At the time it was drizzling. She first crossed Gravier Street, then the concrete-floored service area of the building, and entered the lobby from the Gravier Street entrance.[1] After safely walking four to six feet she slipped and fell on the terrazzo floor of the lobby. At the time she was wearing shoes with leather soles and a medium 2-inch heel. Mrs. Jameson stated the soles of her shoes must have been wet from walking on the wet surface of Gravier Street. At the trial she testified the terrazzo floor appeared to have little puddles of water on it, which apparently is in conflict with her pre-trial deposition that the floor was damp but had no puddles.
The sources of whatever dampness there was on the terrazzo floor were wet shoes and water dripping from raincoats and umbrellas of the mass of people entering this multistoried office building at the beginning of the workday. None of the wetness on the floor could be attributed to rain *787 being blown directly through the doors into the lobby because of the protective overhang of the building.
On rainy or damp days it was one of the assigned and specified duties of the day porter to continuously damp mop in the area of both entrances inside the lobby so that excess water and tracks would be removed from the floor. From his time worksheets it was established that Martin Brunet was the porter on duty on the day of the accident, and although he did not remember Mrs. Jameson's fall, he testified he was positive he had carried out the mopping assignment in the lobby because he customarily and routinely did this every time it was damp or rained.
On appeal, plaintiffs argue the foregoing facts support a judgment in their favor on either one of two theories of liability, namely: (1) Mrs. Jameson, as an employee of a lessee in the building, was afforded the benefit a lessee enjoys under LSA-C. C. art 2695, a strict liability concept that imputes negligence to the landlord once it is established the injury was caused by a vice or defect in the premises; or (2) the building management's maintenance of a hazardous condition constituted actionable negligence under LSA-C.C. art. 2315.
As to the first proposition, plaintiffs have failed to prove the existence of a vice or defect in the leased premises within the contemplation of Article 2695. As the court pointed out in King v. Allstate Insurance Company, 224 So.2d 42 (La.App.1st Cir. 1969), the strict liability prescribed by this article will only be imposed if the injured lessee first establishes the accident was proximately caused by a vice or defect in the premises.
In the instant case Mrs. Jameson somehow slipped on a damp terrazzo floor. There is nothing in the record to indicate the surface of the floor was excessively slippery or unsafe. In short there is no vice or defect here proven. Absent this, there is no liability under Article 2695.
We next consider the argument that the building management was negligent in failing to maintain the floor in a safe condition. This charge is not supported by the evidence. We think every possible precaution was taken to maintain safe walking conditions in the lobby on rainy days by assigning a porter to mop up excess water tracked in the building.
The facts of this case bear a striking similarity to those of Bersuder v. Employers Liability Assurance Corp., 210 So.2d 525 (La.App.4th Cir. 1968). Plaintiff therein slipped on a terrazzo floor while entering an apartment building on a rainy day. Plaintiff charged the operators of the apartment building were negligent in not placing rubber mats at the entrance of the building. The court held the owner was not negligent and pointed out that hundreds of people entered the building daily rain or shine without prior mishap as is true in the instant case. It found that the failure to put rubber mats over the terrazzo entrance to the building on rainy days was not a breach of the standard of ordinary care owed to persons entering the building.
In this case, plaintiffs proved the terrazzo floor was damp. That is all. We cannot conclude from this showing there was actionable negligence by defendant's insured under LSA-C.C. art. 2315. As was stated in Bersuder, the owner is not the insurer of the safety of everyone who enters the premises.
For the reasons assigned, the judgment appealed from is affirmed. All costs of this appeal are to be borne by appellants.
Affirmed.
NOTES
[1] The service area and lobby entrance were sheltered from the elements by an overhang of the building.