312 So.2d 689 (1975)
Vera ANTHONY and Jessie Anthony
v.
UNITED STATES FIDELITY & GUARANTY COMPANY and Alex F. Dreyfus, Trust.
No. 6808.
Court of Appeal of Louisiana, Fourth Circuit.
May 15, 1975.
James Burnett Aime, New Orleans, for plaintiffs-appellants.
Sessions, Fishman, Rosenson, Snellings & Boisfontaine, Harvey L. Strayhan, New Orleans, for defendants-appellees.
Before SAMUEL, STOULIG and BEER, JJ.
STOULIG, Judge.
Plaintiffs, Vera and Jessie Anthony, have appealed a judgment dismissing their suit for damages suffered as the result of a slip-and-fall injury in the living room of their leased premises at 450 Soraparu Street in the City of New Orleans. They alleged defendants, the Alex F. Dreyfus, Trust,[1] and its liability insurer, United States Fidelity & Guaranty Company, were liable because Mrs. Anthony slipped on a wet spot on her living room floor formed *690 by rainwater that had leaked through the roof. From the result reached it is apparent the trial judge found merit in the defense tendered to the effect the roof, having been repaired within two months of the accident, could not possibly have leaked.[2] The evidence does not support a judgment of dismissal.
Both plaintiffs testified the roof had been leaking for approximately two months before the accident and that this condition had been brought to the attention of defendant's maintenance man Gus Breaux. According to Mrs. Anthony, at 8:30 a.m. on March 29, 1971 she slipped in a puddle of water in front of her television set, causing her fall and personal injuries. Her testimony and that of her husband that it had rained the previous night remains uncontradicted.
If the roof was in fact leaking, it is logical to conclude the wetness was rainwater. For defendant lessor to absolve itself and its insurer from liability, they had to establish the roof did not leak. C.C. art. 2695[3] requires a lessor to deliver and maintain the leased premises free from defects and holds him to strict liability if a vice in the property causes injury. Under the express provisions of the lease the defendant was obligated to maintain the roof in a good state of repair.
The evidence adduced by defendants does not negate the alleged vice in the roof. Defendants proved repairs to this roof were undertaken on September 28, 1970[4] and January 20, 1971. It is argued this fact rules out all possibility the roof could still be leaking on March 29, 1971, the date plaintiff was injured. We disagree. It may be urged with equal logic the need for two repair efforts within four months suggests the quality of the repair work left something to be desired and it is possible the workmen did not completely repair the roof in January.
Defendant's maintenance supervisor Gus Breaux, responsible for keeping the leased premises in good repair, stated unequivocally the roof had no leaks on March 29, 1971. He also asserted that after plaintiffs moved from these premises in April 1971, in refurbishing the property for the next tenant it was only necessary to paint the interior. He emphatically denied any sheetrock work was done in the interior. Yet when John Rosen, manager in charge of maintenance, testified from the lessor's records he affirmed extensive sheetrocking was required in the house vacated by plaintiffs. This type of repair work might possibly corroborate plaintiffs' claim the roof had been leaking for two months.
The record, as now constituted, is incomplete. From the colloquy between counsel in the transcript, it is evident there are records in defendant lessor's possession that might clarify the condition of the roof of the leased premises at the time of the accident. Breaux testified he kept daily records that would reflect when repairs were made to all properties for which he was responsible and the nature of the *691 work. These records were not produced. The lessor also kept maintenance files and produced only partial records allegedly showing work performed at 450 Soraparu between April 21, 1971 and May 24, 1971.[5] Breaux's testimony suggests work at this location was under way during the entire month of May but his records were not produced for that period. As the books are compiled on a daily basis covering all properties owned by defendant, production of the lessor's complete records for April and May of 1971 would either establish roof repairs were made to the property after plaintiffs moved or ruled out that possibility.
We think a just result can be reached only if this additional maintenance information is available to the court and for this reason we remand the matter to permit both plaintiffs and defendants to adduce evidence to prove or negate the existence of the vice when the accident occurred. Defendants, having the burden of exculpating themselves from liability, produced incomplete records. Plaintiffs, conversely, could have obtained this information by issuing a subpoena duces tecum.
We conclude by considering defendants' contention that it was relieved of liability because of plaintiffs' failure to give written notice of the leak in the roof as required by the contract of lease. From the testimony of Rosen it is obvious the lessor waived its right to demand written notice of defects because he stated that complaints were customarily made verbally either to him or to Breaux. The defense based on this requirement of the contract is without merit.
For the reasons assigned the judgment appealed from is set aside and this matter is remanded for further proceedings consistent with the views herein expressed. Costs are to be assessed when this matter is adjudicated on the merits.
Judgment set aside; remanded.
BEER, J., concurs with written reasons.
BEER, Judge (concurring).
I respectfully concur.
The majority holds that "For defendant lessor to absolve itself and its insurer from liability, they had to establish the roof did not leak." In support, C.C. art. 2695 is cited.
I agree that C.C. art. 2695 would impose liability if plaintiff was not guilty of contributory negligence which proximately caused her injury. I feel that the holding in this court should be: For defendant lessor to absolve itself and its insurer from liability, they had to establish the roof did not leak or that plaintiff was guilty of contributory negligence which proximately caused her injury. See: Harrell v. Johnson, 242 So.2d 648 (1st Cir., 1970).
Although the trial judge did not hand down written reasons, the issue of plaintiff's contributory negligence was before the court by instanter amendment to the pleadings.
It could be concluded that the dismissal of plaintiff's claim was based upon a factual determination by the trier of facts that plaintiff's recovery is barred by her contributory negligence. She was aware of the leak; knew, from previous experience, that, at times, there was water on the linoleum after a rain and knew it had rained. The record could support a conclusion by the trier of the facts that plaintiff knew or should have known that water was on the floor when she walked over to turn on the television set. Defendants should be as entitled to have us make this *692 conclusive interpretation as plaintiff would be to the opposite. Yet, the rule is very stringent with respect to the issue of contributory negligence in cases such as these. In Redd v. Sokoloski, 2 So.2d 266, 268 (2d Cir. 1941), Judge (later, Justice) Hamiter stated:
"* * * [W]here a tenant has knowledge of the generally defective condition of a portion of the rented premises, but it reasonably appears that he might safely use it with the exercise of care, his use in such manner does not constitute contributory negligence that would bar his recovery in an action for damages resulting from the defects. If, however, he was aware of the defect causing the injury and it was such as to indicate to a reasonable-minded person that use of the defective portion was apparently and imminently dangerous, recovery is not permitted."
I do not feel, in absence of written reasons, that I should make an assumption strong enough to support a finding of contributory negligence to this extent. Yet, I do feel that the majority's opinion should be conditioned to the extent noted herein. Because of this, I respectfully concur.
NOTES
[1] The identity of the owner is not clearly established; however, defendants stipulated their responsibility for the judgment in the event they were cast.
[2] This finding was undoubtedly influenced by the testimony that the lessor had completely refurbished the interior of the premises after the plaintiffs' departure without effecting any additional repairs to the roof. The inference is that such action would have been totally unreasonable had the roof leaked.
[3] "The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same."
[4] The defendant lessor's records show four rolls of 90-pound slate surface were used on the roofs of 446 and 448-50 Soraparu (a double) by three men working eight hours. The amount of labor expended on the roof at 450 is not explained. They further reflect that on January 20, 1971, four rolls of 90-pound slate surface material were used in fixing the roof of 450 Soraparu. Two men worked on this job five hours.
[5] The documentary evidence reflects Exhibit D-2 from January 19 through January 22, 1971 and Exhibit D-3 from September 25 through September 30, 1970 are the daily work records of Mr. Breaux. Exhibits D-4, D-5 and D-6 from April 21 through May 7, 1971; and Exhibit P-5 from May 19 through May 24, 1971, are, as Mr. Rosen testified, a summarization made by the office secretary from Mr. Breaux's daily work records.