344 So.2d 60 (1977)
Voncile WARD and Dorean Ernest, Individually and on behalf of her minor daughter, Dawnelle Ernest
v.
Cotial CONN.
No. 7924.
Court of Appeal of Louisiana, Fourth Circuit.
March 15, 1977.
Rehearing Denied April 13, 1977.
*61 Gertler & Gertler, M. H. Gertler, New Orleans, for plaintiffs-appellants.
Dillon & Williams, New Orleans, David M. Cambre, Kenner, for defendant-appellee.
Before LEMMON, GULOTTA and MORIAL, JJ.
GULOTTA, Judge.
Plaintiffs, a tenant and her invited guests, appeal from a dismissal, after trial on the merits, of their damage suit against an owner-lessor for injuries sustained from an alleged defect in the floor of the leased residence.
Plaintiffs' version of the incident is that on September 4, 1974, during a visit by Dorean Ernest and her 2-year-old daughter to the residence rented by Voncile Ward, the child sustained injury when she fell through a hole in the floor; and that the adult plaintiffs were injured when, in the course of rescue of the child, the floor collapsed and they were struck by loose boards.
Written reasons of the commissioner, which were adopted by the trial judge, pointed out that the dismissal of plaintiffs' suit was based on a failure by plaintiffs to show the existence of a defect. Those reasons, in pertinent part, are as follows:
"* * * The evidence, taken as a whole, failed to show that there was a hole in the floor through which a child fell and that two adults were injured when they went to the child's aid. * *
"The positive testimony of the defendant, her daughter and two repairmen that in fact there was no hole in the floor is considered, on the whole, to be more credible than the testimony offered by the plaintiffs and their witness to the alleged incident."
Plaintiffs' argument, on appeal, is two-fold. First, they claim that the trial judge committed an error of law by imposing an improper burden of proof. Citing Anthony v. United States Fidelity & Guaranty Company, 312 So.2d 689 (La.App. 4th Cir. 1975), *62 they argue that once a defect causing injury has been alleged by the lessee, the lessor, to escape the application of strict liability under LSA-C.C. art. 2695,[1] has the burden of establishing that the defect did not exist. Second, plaintiffs contend that the trial judge made erroneous factual conclusions by his failure to accord proper weight to independent witnesses who corroborated plaintiffs' version of the accident. We disagree.
Our law imposes strict liability upon a lessor for damages occasioned to a lessee due to a defect in the leased premises.[2] However, the tenant relying on recovery under LSA-C.C. art. 2695 bears the burden of showing the existence of a defect, and causation between the defect and the injury.[3] The same standard of strict liability for damages sustained by third parties on a lessor's premises is applicable in defective premises cases.[4] Likewise, in such cases, plaintiff bears the burden of proving the existence of the defect causing injury to him.[5]
We find no merit to plaintiffs' contention that our decision in Anthony relieves plaintiffs of the burden of showing the existence of a defect. We fail to find language in that decision which supports plaintiffs' contention that mere allegation (without proof of the existence of a defect) is sufficient to shift the burden on defendant of exculpating himself from liability. Our holding in that case is not inconsistent with the aforementioned jurisprudence. In Anthony, at page 690, we stated:
"* * * For defendant lessor to absolve itself and its insurer from liability, they had to establish the roof did not leak. C.C. art. 2695 requires a lessor to deliver and maintain the leased premises free from defects and holds him to strict liability if a vice in the property causes injury. * * *" (footnote deleted)
This language does not relieve plaintiff from the initial burden of proving the existence of the defect. Rather, it means that once plaintiff has established the existence of the defect, strict liability will be imposed upon the lessor unless he can establish that the defect did not exist. This "burden of exculpating" himself does not obviate the necessity of plaintiff's proving his case by a preponderance of the evidence. Accordingly, we cannot say, as claimed by plaintiffs, the trial judge erroneously placed a greater burden of proof on plaintiffs than is required in damage suits arising out of defects in premises.
Having so concluded, we are confronted with a question involving credibility of witnesses. Evidence as to the existence of the defect (the hole) is conflicting. The defendant testified that she had inspected the house on the morning following the Wards' leaving the property, within a few days following the alleged incident. She stated that she had gone into the den (the room where the accident allegedly occurred) and had not observed any holes in the floor. *63 Allen Vason and Fred Harris, who did repair work on the premises in September, 1974, after plaintiff Ward had vacated the premises, testified that no holes existed in the den floor. Debbie Conn, daughter of defendant, also testified that the floor was in good condition. Defendant also testified that Mrs. Ward had not complained to her about any problems with the floor.
Plaintiffs, on the other hand, testified that the child fell through a hole in the floor and they were injured when struck by loose boards when they attempted to rescue the child. However, plaintiffs' credibility was weakened by inconsistencies between pretrial discovery depositions and testimony at trial.[6] We might add that the medical evidence relating to the injuries sustained by the adults is suspect. Both sustained similar injuries to the same areas of the back and received similar prescribed courses of treatment by the same doctor to the same degree and were discharged at the same time. Dorean Ernest was discharged by the doctor indirectly through Mrs. Ward who conveyed the discharge message from the doctor to her.
Norbert Stanfield, the housing inspector employed by the Division of Housing Improvements of the City of New Orleans, who examined the premises on August 27, 1974, added little, if anything, to plaintiffs' proof. He testified the floors were deteriorated and in hazardous condition, but he had no independent recollection whether there were any holes in the floor. Russell Dequesne, field supervisor over inspections for the Division of Housing Improvements, testified that the mere use of the term "deteriorated" without further specification does not indicate what type of condition existed in the floor, i. e., whether it contained holes or protruding nails or whatever. He added that specification is to be done by the inspector; and that one finding holes in the floor could add such a detailed description "as a write in" in conjunction with the general classification of the condition of the floor.
The evidence considered, we cannot say the trial judge erred in his factual conclusion that plaintiffs failed to show that "there was a hole in the floor through which a child fell and that two adults were injured when they went to the child's aid". When such a determination of fact is based on credibility of witnesses, as it is in our case, the findings of the trial judge will not be set aside absent manifest error. We find no such error. See Canter v. Koehring Company, 283 So.2d 716 (La.1973). Accordingly, the judgment is affirmed.
AFFIRMED.
NOTES
[1] LSA-C.C. art. 2695 reads as follows:

Art. 2695. Lessor's ability for damages from vices and defects
"Art. 2695. The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same."
[2] LSA-C.C. art. 2695 (see footnote 1.), supra; Ambrosia v. Cherokee Insurance Company, 332 So.2d 559 (La.App. 4th Cir. 1976), writ denied, 337 So.2d 520 (La. 1976); King v. Allstate Insurance Company, 224 So.2d 42 (La.App. 1st Cir. 1969), writ refused, 254 La. 808, 227 So.2d 144 (1969).
[3] Jameson v. Employers Insurance of Wausau, 286 So.2d 785 (La.App. 4th Cir. 1973); Templin v. Traders & General Insurance Company, 288 So.2d 660 (La.App. 3d Cir. 1974).
[4] LSA-C.C. arts. 670 and 2322. Lasyone v. Zenoria Lumber Co., 163 La. 185, 111 So. 670 (1927); Anslem v. Travelers Insurance Company, 192 So.2d 599 (La.App. 3d Cir. 1966); Krennerich v. WCG Investment Corporation, 278 So.2d 842 (La.App. 3d Cir. 1973).
[5] Dunn v. Tedesco, 235 La. 679, 105 So.2d 264 (1958); Jackson v. Insurance Company of North America, 243 So.2d 304 (La.App. 4th Cir. 1971).
[6] Voncile Ward testified in pretrial discovery that the holes were approximately three to four inches in diameter when she first noticed them; at trial, however, she testified that they were "big holes" about the size of a "football or basketball" when first seen by her. In her deposition, she stated that the hole into which the child fell was about one foot in diameter; at trial, she testified that the hole was four feet by two feet in size. At trial, she stated that she had first seen the holes in December, 1972. When confronted with her deposition, in which she stated that she had first observed the holes in 1970, she recanted her earlier testimony. She further testified during her deposition that the accident had happened on the same day that she moved out of the property; whereas, at trial, she stated that she was not sure of the date of the accident, but that it had not happened on the day she moved.