363 So.2d 1247 (1978)
Richard W. FREEMAN, Jr., Louis M. Freeman, Louis V. de la Vergne and Hughes J. de la Vergne, II
v.
G. T. S. CORPORATION.
No. 9404.
Court of Appeal of Louisiana, Fourth Circuit.
October 12, 1978.
*1248 Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Herschel L. Abbott, Jr., Edward B. Poitevent, II, New Orleans, for plaintiffs-appellants, Richard W. Freeman, Jr., Louis M. Freeman, Louis V. de la Vergne and Hughes J. de la Vergne, II.
William W. Rosen, New Orleans, for defendant-appellee, G. T. S. Corp.
Before GULOTTA, STOULIG and GARRISON, JJ.
GULOTTA, Judge.
Plaintiffs, lessors, appeal from the dismissal of their claim for unpaid rent during a nine-month unexpired term of a written lease when the rented premises were vacated by the lessee and left unoccupied and not subleased. In answer to the appeal, defendant lessee seeks reimbursement of the amount paid in rent during a 13 month occupancy, moving expenses, damages for breach of contract and losses to furniture and equipment caused by leaks in the roof and ceiling. Defendant's demands were asserted in a reconventional demand in the trial court and dismissed.[1]
In written reasons for judgment, the trial judge stated:
"G. T. S. Corporation "enjoyed" its occupancy not at all. Where a landlord allows conditions to prevail rendering the premises totally unsuited for their intended purpose, it has breached its warranty to the tenant, even though the conditions are beyond the control of the landlord.
The reconventional demand was dismissed only because the tenant, all too patiently, continued to occupy the premises and having acquiesced in the situation, is bound to pay rent for that period."
It is lessors' contention that the trial judge erred; 1) in concluding the leased premises were unsuited for their intended use; 2) in terminating the lease before expiration of the lease term and relieving lessee from any obligations under the lease; and 3) in failing to find lessee had breached the terms of the lease by failing to give notice of the leakage problems to the lessors as provided in the lease.
As pointed out by plaintiff, the lease provides that any notice to be given to lessor shall be made in writing addressed to the lessor and mailed by registered or certified mail at the place where the rent is required to be paid. Although, admittedly, lessee failed to notify lessors in writing of the porous and leaking condition of the roof as required by the lease, nevertheless, we conclude lessors had notice, well in advance of the date lessee vacated the premises, of the leaking condition of the roof which made the premises unsuitable for occupancy.
The property is owned by four persons. The designated manager-owner testified that he did not receive any complaints from defendant by certified mail, however he did receive, from the real estate agent collecting the rents from lessee, oral complaints made to the agent by the lessee. These complaints were made within four months of the commencement of defendant's occupancy. The three-year lease commenced on June 1, 1969 and terminated on May 31, *1249 1972. Complaints were made to the agent sometime before November, 1969. Defendant vacated the premises in July, 1970. According to the manager, plaintiffs' repairman was sent out to determine and correct the cause of the problem each time complaints were made.
In a November 17, 1969 letter from lessors' rent-collecting agent to defendant, the agent admonished defendant for withholding payment of rent despite defendant's complaints of the leaking roof condition. Furthermore, the manager-owner stated that defendant's complaints which were conveyed to the rental agent, had been communicated to him and that he had orally notified the owners. The rent collecting agent estimated that he had received two or three oral complaints about the premises. He acknowledged that the building was not a very good one and that it was "porous".
Defendant's office manager recalled making several calls and several memos in 1969 regarding complaints of the leaky condition of the roof. He added that on four or five occasions in July and in September, October and November, 1969, he had told the rental agent of the leaks in the roof. The office manager further testified that, though repair attempts were made by the lessors, the leaks were never corrected.
It is clear from the evidence that lessors, through oral complaints, had notice of the defects in the roof. Under the circumstances, we do not conclude that the lessors are relieved of their obligation to maintain the premises in a condition to serve the use[2] for which they are intended merely because written demand of the notice of defects was not given. See Anthony v. United States Fidelity and Guaranty Company, 312 So.2d 689 (La.App. 4th Cir. 1975).
In brief and in argument, plaintiffs point out that even though oral complaints of the leaking roof may have been made in the early months of the lease, no further complaints were made between November, 1969 and July, 1970. According to lessors, lessee's failure to notify them of the continuing defective condition of the roof (which lessors could have corrected, if notified) and lessee's abandonment of the premises in July, 1970 constituted a breach of the lease. We reject this contention.
The record does not support lessors' claim. Although Prentiss C. Havens, former office manager of defendant-lessee, testified he could not remember any specific complaints from November 1969 until July 1970, he also stated that perhaps one or two had been made during that period. Furthermore, lessors' maintenance man stated, in deposition, that he had made repairs during this seven month period. Notwithstanding one of the lessor-owners testified that repairs were made satisfactorily and "subsequent" leaks were not reported, Havens stated that the leaks had never been repaired and had progressively gotten worse. Further, in a July 7, 1970 letter to the lessors' rental agent, Havens indicated G. T. S.' (lessee's) intention to terminate the lease on July 31, due to the leaking roof. The record does not indicate that any repairs were performed by the owner in July, 1970 as a result of this letter. This evidence indicates that the problem was a continuous one. Under these circumstances, we conclude notice was adequate.
We reject also plaintiffs' contention that the trial judge erred when he concluded the rented premises were unsuited for their intended purpose. Not seriously disputed by lessors is the fact that serious leaks existed in the roof allowing water to enter into the rented premises resulting in *1250 ceiling damage and falling plaster.[3] A tenant who occupied the premises before defendant complained of serious leaks which caused extensive flooding in the building. The existence of these leaks was acknowledged in an April 19, 1968 letter from plaintiff's agent to this tenant. The manager explained, however, that correction of the problem was difficult because of debris thrown on the roof from two adjoining hotels which clogged the drains, thereby allowing water to settle on the roof; and because tenants in a hotel occupying rooms on the floor immediately above defendant's space permitted shower stalls to overflow, resulting in water damage on the ceiling of the occupied premises. Plaintiff's maintenance man indicated that on several occasions water had collected on the roof to a one-foot depth. The manager-owner indicated that the weight of the water had caused beams around the skylight to break.
Defendant's employee in charge of maintenance of equipment stored in the building stated he had first noticed leaks around September or October, 1969. He stated that defendant's employees were required to move equipment around the premises to avoid water damage from leaks in the ceiling. These leaks, he claimed, were never repaired. Furthermore, this witness explained that the building could not be used for microfilming, as planned by defendant, because of the lack of a sufficient dry area in the building. Moreover, photographs introduced into evidence showed the deterioration of the ceiling caused by water damage and the presence of plaster on the floor of the premises.
Although the lease required the lessors to maintain the roof of the leased premises in good order and repair, plaintiffs' efforts to correct the leaking roof condition were to no avail. The trial judge properly concluded the premises were totally unsuited for occupancy by the tenant and properly terminated the lease.
We reject also plaintiffs' contention that lessee had the option either of making the repairs and deducting the costs from the rent[4] or filing suit to cancel the lease. Although, LSA:C.C. 2694 affords the lessee the right to make repairs, this codal article is not applicable where the leased premises are unfit for their intended use. Under such circumstances, the lessee is justified in abrogating the lease by vacating the premises and the lessor cannot recover for rent due during the unexpired term of the lease subsequent to the lessee's abandonment. Goldstein v. Stone, 12 La.App. 702, 127 So. 73 (Orl.1930); Gayle v. Auto-Lec Stores, Inc., 174 La. 1044, 142 So. 258 (1932); Keenan v. Flanigan, 157 La. 749, 103 So. 30 (1925).
We find no error also in the dismissal of the lessee's reconventional demand. Defendant is not entitled to reimbursement for rent paid during the approximate fourteen months of occupancy. Long established is the rule that a tenant is not entitled to recover the rent paid as damages for breach of the lease by the lessor when the tenant used the premises during the period which the rent was paid. See Finnin v. Balter, 168 La. 527, 122 So. 716 (1929); Gamble v. New Orleans Housing Mart, Inc., 173 So.2d 219 (La.App. 4th Cir. 1965); Reed v. Classified Parking System, 232 So.2d 103 (La.App. 2d Cir. 1970), writ refused, 255 La. 1098, 234 So.2d 194 (1970); Friendly Finance, Inc. v. Cefalu Realty Investment, Inc., 303 So.2d 558 (La.App. 1st Cir. 1974).
*1251 Finally, we conclude, as apparently did the trial judge, that lessee has failed to establish by a sufficiency of evidence the amount of water damage resulting from the leaks. It is a plaintiff's burden to prove with legal certainty every item of damages claimed. Culpepper v. Natchitoches Parish School Board, 333 So.2d 453 (La.App. 3d Cir. 1976), writ denied, 338 So.2d 289 (La.1976). This burden must be borne by competent evidence showing the extent of the damage and plaintiff's own uncorroborated personal estimate of the value of the loss is insufficient. See Cloney v. Travelers Insurance Company, 253 So.2d 83 (La.App. 1st Cir. 1971), writs refused, 259 La. 871, 872, 253 So.2d 212 (1971); Saulter v. Cousin, 294 So.2d 251 (La.App. 1st Cir. 1974).
Evidence of damage offered by lessee consisted only of estimates of lessee's maintenance employee. No independent estimates of repair to damaged property or replacement costs were submitted. Lessee simply failed to introduce sufficient and competent evidence upon which the trial judge could reliably base a damage award. See Goynes v. St. Charles Dairy, 197 So. 819 (La.App. 1st Cir. 1940). Accordingly, the judgment is affirmed.
AFFIRMED.
NOTES
[1] Defendant's claims in reconvention were as follows: $6,000 reimbursement of rent; $2,500 loss occasioned by water damage and cost of moving; and $5,000 damages for breach of contract.
[2] LSA-C.C. art. 2692 provides:

Article 2692. Obligations arising from nature of contract
"Art. 2692. The lessor is bound from the very nature of the contract, and without any clause to that effect:
1. To deliver the thing leased to the lessee.
2. To maintain the thing in a condition such as to serve for the use for which it is hired.
3. To cause the lessee to be in a peaceable possession of the thing during the continuance of the lease."
[3] Although acknowledging that water entered the building, lessors argue that no structural defect existed but that stopped-up plumbing in the second floor of the premises, occupied by another tenant as a hotel, caused leaks in the ceiling and that trash-clogged drains or "scuppers" on the roof of the building caused water to build up on the roof and leak into the first floor of the premises rented by G. T. S.
[4] Art. 2694. Lessee's right to make repairs upon lessor's failure.

"Art. 2694. If the lessor do not make the necessary repairs in the manner required in the preceding article, the lessee may call on him to make them. If he refuse or neglect to make them, the lessee may himself cause them to be made, and deduct the price from the rent due, on proving that the repairs were indispensable, and that the price which he has paid was just and reasonable."