DOUCET, Judge.
The facts show that plaintiffs, Michael and Marlene Guidry, leased a piece of commercial property from Weldon Taquino, owner of the premises. Thereafter, the Guidrys had no further use for the property and sublet it to defendant, Gary Cove. A written sublease agreement between plaintiffs and defendant was entered into on November 10,1984. The purpose of the lease was to allow defendant to operate a retail waterbed facility.
Shortly after moving onto the leased premises, defendant complained to the Gui-drys and Mr. Taquino regarding a roof leak which was leaking into the leased premises. Mr. Taquino responded to defendant’s complaints by hiring Pellerin and Wallace Roofing Contractors. The roofing contractors attempted to repair the problem, but to no avail. The roof continued to leak after every heavy rain. Randall Hebert, an engineer whose business is located next to the premises in question, Yvonne Breaux, the sales manager at Waterbed Warehouse, Vernon Trahan, an employee of defend *570 ants, and defendant, all testified that the roofing contractors attempted to fix the roof on two different occasions. Even after these two attempts, the leaking problem was not corrected.
Every time the roof leaked, defendant and his employees were forced to dismantle the waterbeds and stack them on the opposite side of the room so that they would not be damaged by the water. Often, the beds would have to remain dismantled for a period of three to four days so that the carpet could dry. Moreover, it was established at trial that a portion of defendant’s merchandise was damaged by the water.
After several complaints to the Guidrys and Mr. Taquino, and after repair attempts by the roofing contractors, defendant relocated his business at the end of six months. After a period of time elapsed, plaintiffs filed suit against defendant for past due rentals and defendant reconvened for damages. A trial on the merits was held and with respect to the main demand, the trial court judge ruled in favor of defendant holding that the Guidrys had breached the lease and that Cove was entitled to vacate the premises because the roof leak rendered the building unsuitable for its intended use. Additionally, the trial court judge dismissed defendant’s reconventional demand. It is from this judgment that plaintiffs appeal.
In plaintiffs’ first specification of error, they urge “That the trial court erred in finding that there existed a defect of the premises of such a severity as to justify a cancellation of the lease.” We disagree.
As previously stated, defendant subleased a building from plaintiffs for the purpose of opening a waterbed retail facility. Defendant displayed waterbeds, bed spreads, and other items in the store. Shortly after moving into the store, the roof started leaking water into the premises after every heavy rain. Defendant and his manager made several complaints to the Guidrys and Mr. Taquino about the leaking problem. Mr. Taquino hired Pelle-rin and Wallace Roofing Contractors to repair the roof, and the employees of the company attempted to fix the roof on at least two occasions, but to no avail, the roof continued to leak. Yvonne Breaux, the manager of Waterbed Warehouse, testified that she called Taquino's secretary several times to report that they were still having problems with water leaks but that nothing was done at this time to remedy the problem. Each time the roof leaked, defendant and his employees were forced to dismantle the waterbeds and stack them at the other side of the room. Often, the beds would remain stacked on the other side of the room for days before the carpet could dry and they could put them back together. Based on the foregoing, we find that the premises were unsuited for their intended purpose.[1] As such, we will not disturb the lower court’s finding with respect to this issue on appeal.
In plaintiffs’ second specification of error, they contend “That the trial court erred in not awarding plaintiff-appellants recovery for lease payments during the period of continued possession by the sub-lessee, defendant-appellees.” We disagree.
In support of the above contention, plaintiffs cite several cases. However, the cases cited by plaintiffs are distinguishable from the facte of the instant situation. The cited cases deal with the situation where there is merely a defect in the rented premises. The cases do not deal with the situation where the defect renders the premises unsuited for their intended purpose. In such a situation, a lessee has the option of vacating the premises. The following cases speak to this very issue.
In Freeman, supra, the landlord filed suit against his tenant for unpaid rent which accrued during a nine-month unexpired term of lease when the rented premises was left vacant by the tenant. The tenant contended that he vacated the prem *571 ises due to a roof leak. The Fourth Circuit held that the roof leak rendered the building unsuitable. After making this determination, the court stated:
“We reject also plaintiffs’ contention that lessee had the option either of making the repairs and deducting the costs from the rent4 or filing suit to cancel the lease. Although, LSA:C.C. 2694 affords the lessee the right to make repairs, this codal article is not applicable where the leased premises are unfit for their intended use. Under such circumstances, the lessee is justified in abrogating the lease by vacating the premises and the lessor cannot recover for rent due during the unexpired term of the lease subsequent to the lessee’s abandonment. Goldstein v. Stone, 12 La.App. 702, 127 So. 73 (Orl.1930); Gayle v. Auto-Lee Stores, Inc., 174 La. 1044, 142 So. 258 (1932); Keenan v. Flanigan, 157 La. 749, 103 So. 30 (1925).”
In Credithrift of America, Inc. v. Sinclair, 430 So.2d 822 (La.App. 5th Cir.1983), the court was once again faced with the situation where a lessee vacated the leased premises due to a defect which rendered the premises unsuited for their intended purpose. In Credithrift, supra, the court stated:
“Although LSA-C.C. art. 2694 allows the lessee to make repairs and deduct the reasonable price of the repairs from the rent, he is not required to do so if the premises are unfit for their intended use. Freeman v. G.T.S. Corporation, 363 So.2d 1247 (La.App. 4th Cir.1978). When lessee vacates for that reason, the lessor cannot recover rent due during the unexpired term of the lease. Freeman, supra. And failure to repair a leaking roof has been held to be justification for vacating the premises prior to the expiration of the lease term. Freeman, supra; Goldstein v. Stone, 12 La.App. 702, 127 So. 73 (Orl.1930).”
In light of the foregoing cases, we find that it was proper for the trial court to hold that defendant was justified in vacating the premises prior to the expiration of the lease term. As such, plaintiffs’ contention is without merit.
With respect to plaintiffs’ contention that defendant never gave up possession of the premises because he retained the keys to the building, because defendant hung a sign on the premises directing customers to his second location and because defendant did not remove a large sign from the premises, we find this to also be without merit. Plaintiffs never once asked for the signs to be removed or for defendant to return the keys to them. If plaintiffs wanted to re-lease the building, they could have contacted defendant for the keys and requested defendant to remove the signs. If defendant refused to do so, they were free to remove the signs themselves and change the locks on the door. Thus, we find that defendant sufficiently vacated the premises so as to relinquish possession of the premises. As such, this contention is without merit.
Finally, having found that defendant was justified in vacating the premises preter-mits the discussion of defendant’s assertion that the lease was invalid after the initial three months.
Accordingly, for the foregoing reasons, the judgment of the lower court is affirmed. All costs are assessed to plaintiffs-appellants.
AFFIRMED.

. See Freeman v. G.T.S. Corp., 363 So.2d 1247 (La.App. 4th Cir.1978), wherein the Fourth Circuit held that where serious leaks existed in the roof allowing water to enter into the rented premises resulting in ceiling damage and falling plaster and where the landlord’s efforts to correct the leaking roof condition were to no avail, the trial court properly concluded that the premises were totally unsuited for occupancy by the tenant.