SEXTON, Judge.
Plaintiff-lessor, Coleman-Lyons 2800, filed suit against defendant-lessee, Dr. Gregory Bryan, D.P.M., seeking to accelerate all lease payments under a written commercial lease, as well as to recover expenses related to common area maintenance, taxes, and insurance, plus interest and attorney fees. Following a district court judgment in favor of the lessee, plaintiff takes this appeal. We affirm.
Defendant, a doctor of podiatry, leased commercial space from plaintiff on August 1, 1985, for the purpose of housing his podiatry practice. This lease had a term of 60 months with a monthly lease payment of $1080. Under the lease agreement, the lessee was responsible for all interior maintenance while the lessor remained responsible for maintaining the exterior of the facility.
After moving in, the lessee experienced leaks in the building’s roof which permitted substantial amounts of water to flow into his office. Each time he experienced a leak, his office would contact either the office of the lessor or its maintenance man to remedy the problem. The lessor’s maintenance man made numerous visits to the lessee’s office in an attempt to remedy these problems, but they continually ré-curred.
After 18 months of the 60-month lease had transpired, in February 1987, the lessee left the premises and began to lease elsewhere. Following his departure, the lessee sent a letter to the lessor advising of his leaving and returning the keys to the premises to the lessor.
This suit ensued. At the conclusion of a brief trial, the district court commented on the severity and continuing nature of the leaks, noting that “there were major problems with the roof.” The court also found it somewhat unusual that the lessee endured “these gross and severe problems” without discussing the situation with anyone other than the lessor’s maintenance man. Finally, the judge noted that there was a problem with the leased premises, though he found that the most severe leak had been repaired prior to the lessee’s abandonment of the leased premises. He then took the matter under advisement.
After lengthy deliberation, in a briefly worded opinion, the district court ruled in favor of the defendant-lessee, rejecting all demands of the plaintiff-lessor. The plaintiff-lessor now appeals.
The threshold issue is whether the district court was clearly wrong in its factual determination that the leaky roof precluded the lessee from maintaining an effective practice of podiatry. If the district court was not clearly wrong in that regard, then the legal issue becomes whether the lessee was justified in abandoning the leased premises.
Lessor’s first argument is that the leaks were not sufficiently substantial to interfere with the lessee’s medical practice. Specifically, lessor argues that since the lessee did not complain to anyone other than the maintenance man and did not notify lessor in writing about the problem that he was not as troubled by the leaks as he now claims to have been. The lessee counters that the district court’s conclusions in this regard were findings of fact and, absent a finding by this court that such conclusion was clearly wrong, the district court judgment should be affirmed.
In the instant case, the record demonstrates that the lessee was constantly bothered by a leaking roof. The most significant of these leaks was located in one room of his office which was regularly used for x-raying patients. He testified that, de *667 pending on the severity of the rainfall, the influx of water ranged from a drip to a constant pouring. He testified that he had to repeatedly warn his patients against the dangers of the slippery floor.
Lessee testified that many of his patients had problems with ambulation or they probably would not have needed the services of a podiatrist. In addition, many of his patients were elderly and walked with the assistance of crutches or a walker. Under those circumstances, wet floors were unacceptable. In addition, the lessee occasionally performed minor surgeries in his office and he testified that excessive humidity in the office increased the risk of postoperative infections.
In addition to the problem presented by this particular leak, there were other leaks in the premises. While the major leak may have been resolved when the lessor’s maintenance man covered and sealed a hole which was originally put in the roof in order to run a cable TV wire through the roof, the other leaks were the result of the inherent weakness in the flat roof on the premises. The maintenance man testified that, given the rapid changes in temperature in this part of the country, any repairs made to the roof would be temporary in nature and that new leaks could be expected to arise on that same roof.
The maintenance man also testified that he made repeated visits to the lessee’s office to make repairs to the roof and was of the opinion that he was not going to be capable of completely repairing the roof. He further testified that the leased premises had experienced problems with roof leaks prior to the instant lessee’s tenancy and would probably continue to have such problems.
Given the severity and continual nature of the instant leaks, together with the repeated repairs and repeated assurance that the problems were resolved, we find no manifest error in the district court’s conclusion that the leased premises were unsuitable to conduct a practice of podiatry. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), on remand, 370 So.2d 1262 (La.App. 3rd Cir.1979), writ denied, 374 So.2d 660 (La.1979).
Having concluded that the district court was not clearly wrong in finding that the leaky roof rendered the leased premises unsuitable for the practice of podiatry, we now turn to whether, under all of the circumstances, the lessee was legally justified in abandoning the premises, without any notice to the lessor, in anticipation of a dissolution of the lease.
The lessor is bound from the very nature of the contract and without any clause to that effect, to maintain the thing in a condition such as to serve for the use for which it is hired. LSA-C.C. Art. 2692. The lessor is bound to deliver the thing in good condition and free from any repairs. He ought to make, during the continuance of the lease, all the repairs which may accidentally become necessary, except those which the tenant is bound to make. LSA-C.C. Art. 2693. The neglect of the lessor to fulfill his engagements may also give cause for a dissolution of the lease in the manner expressed concerning contracts in general. LSA-C.C. Art. 2729.
Where a lessor neglects to fulfill his statutory duty to maintain the roof of a leased building in such condition as to serve for use for which the structure was leased during the continuance of the lease, the lessee may cause repairs to be made and deduct the price thereof from the rent due on proving that the repairs were indispensable and that the price paid was just and reasonable or, where the leased premises are unfit for their intended use, he may abrogate the lease by vacating the premises. LSA-C.C. Art. 2694; Freeman v. G.T.S. Corporation, 363 So.2d 1247 (La.App. 4th Cir.1978).
The circumstances in the instant case are akin to those found in Goldstein v. Stone, 12 La.App. 702, 127 So. 73 (Orl.Cir.1930). In Goldstein, plaintiff-landlord sued defendant-lessee to recover on three unpaid rent notes. Defendant claimed that the premises were uninhabitable because of the failure of the plaintiff to repair the roof which constantly leaked and of which fact he had repeatedly notified the plaintiff, who often *668 promised to make repairs and as often failed to do so. He alleged that the water from the leaking roof damaged his furniture and that, being unable to obtain any relief from the landlord, he vacated the premises and thereafter refused to pay any more rent.
The district court found for the plaintiff and the defendant appealed. The evidence convinced the appellate court that the roof leaked very badly and that the defendant had made repeated efforts to have his landlord repair it, to no avail. The landlord admitted that the roof leaked but argued that the defendant should have had the necessary repairs made and deducted that from his rent payments. The appellate court found that the civil code gives the lessee the privilege of making necessary repairs but not an obligation to do so. Under the circumstances, the appellate court found that the lessee was justified in vacating the premises.
In Guidry v. Cove, 525 So.2d 569 (La.App. 3rd Cir.1988), the sublessee of a retail waterbed business suffered with a leaking roof in the leased premises, which continued to leak after every heavy rain and which required him to dismantle waterbeds each time until the carpets dried. Repeated efforts by roofing contractors to repair the roof were unsuccessful. The court found that these conditions rendered the premises unsuitable for their intended purpose and that the sublessee was therefore justified in electing to cancel the sublease and vacate the premises.
The defendant in Freeman v. G.T.S. Corporation, supra, leased commercial space from the plaintiff partnership. The leased premises had serious problems with a leaky roof; at one point the premises were described as “porous.” Defendant made several complaints to the landlord regarding the leaks. A repairman was sent out numerous times, but the problem was never resolved. The trial court and appellate court both found that the plaintiff had notice of the defects through oral complaints and that plaintiff was not absolved from its obligation to repair the premises merely because there was no written demand. Those courts also both found that the leaks were sufficiently serious to make the premises unsuited for occupancy and justified termination of the lease.
The lessee here was entitled to regard the lease agreement as dissolved without any notice to his lessor because of the lessor’s repeated failure to repair the leaky roof. LSA-C.C. Art. 2016. The lessee had sufféred through leaks each time it rained, despite reassurances from the lessor’s maintenance man that the problem had been solved. Not only did the problems recur, but the maintenance man also conceded at trial that little or nothing could be done to permanently solve the problem because of the design of the roof.
Lessee was thus faced with either remaining in the leased premises and continuing to forbear an unsuitable facility or abandoning the leased premises for a more suitable facility. Given the numerous opportunities to resolve the problems, which the lessor either failed to do or was incapable of doing, any further demand by the lessee would have been a vain and useless act, one which the law does not require. See Freeman v. G.T.S. Corporation, supra, and Anthony v. United States Fidelity & Guaranty Insurance Company, 312 So.2d 689 (La.App. 4th Cir.1975).
Plaintiff argues strenuously that the most significant leak had been repaired pri- or to defendant’s abandonment of the premises. We note that the defendant abandoned the premises only a relatively short time after any such repair. We conclude that due to the recurring nature of the leaks, the lessee was justified in losing confidence in the habitability of the leased premises.
In summary, we find the district court was not clearly wrong in its determination that the leaky roof on the instant premises rendered it unsuitable for the practice of podiatry. We further conclude that under the instant circumstances the defendant was legally justified in abandoning the premises. Because of these conclusions, it is unnecessary that we consider the lessor’s additional arguments regarding the amount of damages and attorney fees it *669 should be awarded under the lease contract. The judgment of the district court is thus affirmed with all costs to be paid by plaintiff-appellant.
AFFIRMED.