687 So.2d 612 (1997)
Sammie LOTT, Christopher Bairnsfather, et al.
v.
Marion LEBON, et al.
Dennis MARQUETTE, d/b/a Marquette Hardware
v.
Marion LEBON, et al.
Nos. 96-CA-1328, 96-CA-1329.
Court of Appeal of Louisiana, Fourth Circuit.
January 15, 1997.
Writ Denied March 21, 1997.
*613 Harry J. Boyer, Jr., Laura Gasiorowski, New Orleans, Charles J. Hebert, Metairie, for Lott, Bairnsfather, and the Browns, Appellants.
Raymond A. Milly, Metairie, for Dennis Marquette, Appellant.
Hailey, McNamara, Hall, Larmann & Papale, L.L.P., Michael P. Mentz, Metairie, for the Lebons and First Financial Insurance, Appellees.
The Law Offices of Steven H. Beadles, Steven H. Beadles, Robert J. Clinton, Carol A. Swanda, Dallas, Texas, for Aetna Casualty & Surety Company, Appellee.
*614 Before CIACCIO and LANDRIEU, JJ., and JAMES C. GULOTTA, J. Pro Tem.
JAMES C. GULOTTA, J. Pro Tem.
This is an appeal from a directed verdict by the trial judge at the conclusion of the evidence submitted by all parties. The litigation arises from a fire that occurred on April 4, 1988 in a two-story building in the City of New Orleans. The lower floor of the building was occupied by Marquette Hardware and other shops and the second floor was occupied by tenants in several apartments. The fire destroyed the building in its entirety as well as an adjacent one. Both destroyed buildings were owned by defendant Lawrence Lebon and the Lebon family. The plaintiffs in this suit were the occupants of the second floor residential apartments and the owners of a shop located in the adjacent building which was damaged by the fire.
Suit was directed against the owners, the Lebon family, and their insurer First Financial Insurance Company and against Dennis Marquette, Jr., the owner and operator of the ground floor hardware store and his insurer, Aetna Casualty & Surety Company. The claims of the plaintiffs are based upon damages suffered as a result of the fire.[1]
According to plaintiffs the fire resulted from the careless placing of flammable liquids in containers in the hardware store resulting in the negligent care of hazardous materials. The hardware store owner claimed, in his defense, that the fire had been caused by a defect in the building's electrical system. Aetna and the Lebon family presented a defense of arson on the part of the hardware owner, Marquette. Aetna, the hardware owner's insurer, claimed that material representations and concealment of material facts concerning the claim following the fire by its insured had nullified the entire policy thereby exonerating it from payment of any damages.
Despite this case being tried before a jury, at the close of the evidence the trial judge granted motions for directed verdict in favor of Aetna and the Lebon group and against all parties. The motion for a directed verdict in favor of the Lott group against Marquette was granted based on an intentional tort.
The trial judge stated:
... I find that the evidence was so overwhelming to prove that the fire had been intentionally set in my opinion by Mr. Marquette, that reasonable persons could not reach any other conclusion.
All other causes of action were dismissed.
The Lott group and the adjacent business property owner appeal. In their appeal the Lott group contends that the trial judge erred in dismissing Aetna from liability based upon misrepresentations and concealment of facts by Marquette after the fire had occurred which voided the policy thereby negating any claims by third parties against Aetna, Marquette's insurer. Lott further complains that the trial judge erred in dismissing the Lebon family (the property owners) where there was a clear showing of negligence and strict liability on the part of the owners in failing to properly take precaution in fire prevention irrespective of the finding that the fire had been intentionally started by Marquette. Complaining that the trial judge invaded the fact finding responsibility of the jury, plaintiffs claim that the evidence was such that the jury could have reached a conclusion that the fire was caused from faulty wiring rather than from arson. In this connection plaintiffs claim that the deplorable condition of the building and the lack of fire detection and prevention equipment accelerated the fire causing the total destruction of the building.
Plaintiffs further contend that contradictions in expert testimony regarding the condition of the electrical and wiring system in the building are more reason for the evidence *615 to be weighed by the jurors in making a credibility determination.
Of significance is the complaint by plaintiffs of the holding that Aetna, Marquette's insurer, was relieved of liability based on the intentional acts of its insured to misrepresent the cause of the fire. According to plaintiffs no privity of contract exists between them and Marquette's insurer. Plaintiffs claim that the actions of the insured or any failure to act on the part of the insured cannot defeat the claim of damaged third parties. Plaintiffs, in this connection, rely upon West v. Monroe Bakery, 217 La. 189, 46 So.2d 122 (La.1950). In that case the problem was the failure of notice to the insurer by the insured as required under the policy provisions. The court concluded in West that plaintiff's cause of action cannot be defeated by the failure of notice by the insured to the insurer where the injured person has no way to see that such notice is given. Based on the West decision, plaintiffs claim their rights against the insurer Aetna should not have been denied.
Finally, plaintiffs complain of the insufficiency of the award as well as the assessment of costs to them growing out of the litigation between them, Aetna and the Lebon family. According to plaintiffs because Marquette was cast in judgment as the responsible party, all cost of the litigation should be assessed against Marquette. Further, plaintiffs claim that because the Lebons' cross-complaint was dismissed they should bear the burden of payment of these costs. These costs were incurred in connection with the Lebon family's claim of negligence against Marquette and Aetna.
Marquette also appeals the ruling of the trial judge granting the directed verdict in favor of the Lebon group, First Financial Insurance Company and Aetna Casualty & Surety Company. Aetna answered the appeal seeking an affirmation of the trial judge's ruling. In the alternative, Aetna argues that if the plaintiffs and Marquette are granted a new trial, then the trial court committed harmful error when he excluded testimony offered by Janet Dennis concerning a statement made by Marquette's alleged co-conspirator concerning an alleged conspiracy to commit arson.
In well considered and well written reasons the trial judge went into an in depth analysis of the expert testimony and concluded that unquestionably the cause of the fire was the intentional arson of the building by Marquette. Based on the evidence he concluded that reasonable men could not differ as to the cause of the fire. His analysis of the evidence exonerated any electrical cause either in the circuit breaker or the electrical system. He concluded further that any preventative devices such as fire and smoke detectors would have been to no avail considering the circumstances surrounding the arson. His conclusion was based upon a finding that Marquette poured gasoline throughout the ground floor of the hardware store. Under these circumstances he found that the sole and only cause of the damages resulting to plaintiffs was caused by Marquette and dismissed the Lebon family from any liability. We agree.
Louisiana Code of Civil Procedure article 1810 provides that
[a] party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict that is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for directed verdict is effective without any assent of the jury.
A trial judge has much discretion in determining whether or not to grant a motion for a directed verdict. Barnes v. Thames, 578 So.2d 1155 (La.App. 1st Cir. 1991), writs denied, 577 So.2d 1009 (La.1991). A motion for a directed verdict is appropriately granted in a jury trial when, after considering all evidentiary inferences in the light most favorable to the movant's opponent, it is clear that the facts and inferences are so overwhelmingly in favor of the moving *616 party that reasonable men could not arrive at a contrary verdict. New Orleans Property Dev. v. Aetna Cas., 93-0692 (La.App. 1st Cir. 4/8/94), 642 So.2d 1312, on rehearing; Adams v. Travelers, 589 So.2d 605 (La.App. 2nd Cir.1991). However, if there is substantial evidence opposed to the motion, i.e., evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury. New Orleans Property Dev.; Adams.
On appeal, the standard of review for directed verdicts is whether, viewing the evidence submitted, the appellate court concludes that reasonable people could not reach a contrary verdict. Bergeron v. Blake Drilling & Workover Company, Inc., 599 So.2d 827 (La.App. 1st Cir.1992), writs denied, 605 So.2d 1117, 1119 (La.1992).
The record supports the conclusion of the trial judge compelling the granting of a motion for a directed verdict, based not on a credibility determination (a factual issue), but on a sufficiency of evidence determination (a question of law). The New Orleans Fire Department's investigative report identified the probable cause of the fire as "aggravated arson." Further, the testimony presented by the defendants' expert witnesses substantiated the defendants' allegation that the fire was intentionally set by Marquette or someone hired by Marquette.
Randy Bruff, a fire investigator with INS Investigations Bureau, inspected the fire scene. Bruff was acknowledged to be an expert in the cause and origin of fires. Bruff's conclusion that the fire was intentionally set was based upon the burn patterns found in the hardware store and the fact that fire debris samples collected tested positive for gasoline. According to Bruff, the burn pattern was twenty-five to thirty feet from the front of the store to the end of one of the merchandise aisles. The point of ignition occurred at the end of the burn pattern, which was the "southern" end (towards the rear storage room and away from the front door). He estimated that two to five gallons of gasoline would have been required to make a pattern that was twenty-five feet in length. Further, Bruff eliminated all accidental causes for the fire, including the possibility of a short in the electrical system. He did not find any evidence of an electrical failure at the breaker box. The witness noted that an electrical fire could not explain the burn patterns found on the floor of the store. Three fire debris samples were taken to determine the flammable liquid found on the wooden floor. The laboratory tests were positive for gasoline.
Dr. Andrew T. Armstrong of Armstrong Forensic Laboratory, Inc. tested the samples collected by Randy Bruff. Gasoline and turpentine were found in the samples. The turpentine came from the resin product used in the wood floor. Kerosene and mineral spirits were not found in the samples. Leaded gasoline was found in both the wooden floor samples and glass samples submitted by Bruff. Dr. Armstrong testified that in order to find an ignitable liquid after a fire, there had to be a considerable quantity of liquid material present during the fire. Two to five gallons of gasoline would be sufficient to find gasoline in samples of fire debris. Armstrong also concluded that the burn pattern on the wooden floor was caused by the high intensity burning of gasoline. He stated that the burn pattern had been generated early in the fire from the presence of gasoline.
Plaintiffs and Marquette relied upon the testimony of Larry Chan and Victor Caballero to suggest that the fire was the result of a defect in the breaker box. Chan, the chief electrical inspector for the City of New Orleans, acknowledged that any opinion he would express with regards to whether any of the electrical appliances caused or contributed to the fire would require pure speculation and conjecture. Chan inspected the electrical system after the fire but did not review the fire inspection reports. He stated that two or three breakers in the interior breaker panel appeared to have been tripped. According to Chan, a tripped breaker indicates there was an overload or a short circuited overload due to excessive amounts of current or amps drawn off of that circuit. This witness admitted that the fire could have caused the circuit breakers to trip. He *617 could not say with certainty that there was faulty wiring or that faulty wiring caused the fire. He could not tell if the wires on the panel were defective or deteriorated because the breaker panel was burned during the fire. He admitted that the rust on the breaker box could have occurred as a result of water used to put out the fire.
Victor Caballero, an electrical engineer employed by Shell Oil Company as the manager of electrical services at the Norco Refinery, testified that the fire could have been caused by a defect in the electrical system. He admitted that he neither visited the fire scene nor reviewed the fire investigative report. His testimony was based upon a review of photographs of the fire scene and the deposition of Peter Schiro, an electrician hired by the Lebons to handle electrical problems in the buildings owned by them. Caballero stated that the photographs he viewed revealed an electrical system in a deplorable condition. According to Caballero, the breaker in the bottom right corner was "severely heated". Caballero believed that the breaker did not operate properly and there was an electrical fault downstream. He stated that it is more probable than not that the fire was caused by the bottom right breaker. He indicated that the fire started either in the breaker box or downstream (electrically speaking) from that circuit. However, he did not know where the circuit ran. Caballero asserted that even if the circuit ran to a part of the store not involved in the fire, his opinion would remain the same. However, he acknowledged that if the wires in a circuit were attacked by a fire and the insulation burned, one would expect a fault to occur. In addition, he stated that when he considered the possible causes of the fire, he did not include the possibility that the fire had been intentionally set. Caballero testified that the rust and corrosion found in the breaker box was not caused by the water, heat and chemicals present during the fire. He concluded that the rust was too extensive to have been caused during the fire.
The defendants' theory of arson is also supported by testimony of the firemen who responded to the call. The officers stated that the rear door of the hardware store was closed but unlocked. Captain Charles Dalferes, Jr. testified that there were no signs of forced entry to the hardware store. Marquette testified that he always locked the back door first when he closed the store in the evenings. Marquette stated that on the Friday prior to the Monday fire, he locked the back door, turned off the lights and then left the store through the front door. The front door was then padlocked. The door had three locks on it.
Marquette stated that "Cigar" (described as a transient who lived on the street) was with him on Friday night when he locked the store. Marquette stated that on occasions "Cigar" would sweep the store and he would then buy Cigar lunch. On the morning of the fire, an eyewitness, James McKenzie, testified that he saw an old man in the area of the fire with a bag picking up cans. Janet Dennis, a former employee of the Rendezvous Bar, testified without objection that she had seen Cigar the morning of the fire and he told her "I'll do this one [referring to the Rendezvous Bar] for free."
Defendants, the Lebon group and Aetna, produced evidence which revealed that Marquette's financial situation was a plausible motive for the arson. The defendants introduced testimony from a certified public accountant who reviewed Marquette's financial records and determined that the business was failing and Marquette's business would probably only remain open for one more year. Marquette had not timely filed and/or paid federal, state and city taxes for the years 1985, 1986 and 1987. Tax liens had been filed against Marquette for the past taxes owed. He was in arrears with his suppliers. One of the suppliers obtained a default judgment against Marquette and seized his bank account. Other suppliers would only deal with Marquette on a cash basis.
The evidence overwhelmingly supports the trial judge's finding that Marquette, by himself or with a co-conspirator, intentionally ignited the fire in the hardware store. The trial court recognized the limitations of the plaintiffs' experts and correctly relied upon the testimony of the defendants' *618 experts. Expert testimony based on speculation, conjecture and mere possibilities cannot support a judgment. Shackman v. Daigle, 447 So.2d 629 (La.App. 4th Cir.1984). As the trial judge stated:
As the testimony unfolded, however, it was clear these witnesses had not been provided with sufficient information to make comprehensive evaluations to the available evidence, not to reach opinions in this particular case that did not require considerable speculation and conjecture. Neither expert was employed while the fire scene was in tact, nor had they even been in the store prior to the fire. They had been supplied only with photographs of the distribution panel, [and] a limited number of other photographs taken by INS.
The commission of the intentional act of arson is an exception to coverage under Marquette's fire policy with Aetna. Section II of the policy issued by Aetna provides that Aetna "will pay all sums [the insured] must pay as damages due to bodily injury or property damage covered under this policy caused by an occurrence." The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage which you neither expected or intended." The policy additionally excludes coverage when the "insured had willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, of the interest of the insured therein, or in case of fraud or false swearing by the insured relating thereto." In the sworn statement for proof of loss, Marquette attested that his property loss from the fire "did not originate by any act, design or procurement" on his part. However, the evidence as discussed herein dictates otherwise.
The plaintiffs' reliance upon West is misplaced. In West, the court held that the rights of an injured person under the Direct Action statute becomes fixed at the time of the injury producing event and cannot be prejudiced by the action of the insured in the absence of evidence of fraud or conspiracy. See also Futch v. Fidelity & Casualty Company, 246 La. 688, 166 So.2d 274 (1964).
In the instant case, it is clear from the evidence as found by the trial judge that Marquette knowingly made a false assertion that he was not involved in the origination of the fire. The damages sustained by the plaintiffs were the result of actions taken by Marquette which he intended or expected to occur when he or his accomplice set the hardware store on fire. The trial judge was correct in granting a directed verdict in favor of Aetna. Coverage does not exist under Marquette's policy because of Marquette's intentional acts.
The testimony also supports the trial judge's conclusion that the Lebons are not liable to their tenants for the damages sustained. An owner's liability for a vice or defect on the premises is rooted in La.C.C. articles 2317 and 2322. Both articles impose strict liability, or liability without fault, based upon status as an owner or custodian rather than on personal fault. Under La.C.C. article 2317, liability is imposed upon an individual as a custodian for damage caused by things in his custody. Loescher v. Parr, 324 So.2d 441 (La.1975). Under La.C.C. article 2322, an owner is liable for damages to any person injured in an accident caused by the owner's neglect to repair the building or from a defect in its original construction. Olsen v. Shell Oil Co., 365 So.2d 1285 (La. 1978). To recover under La.C.C. article 2317, a plaintiff must prove that he was injured by a thing which was in the care or custody of the defendant and that such thing was defective. Loescher. To recover under La.C.C. article 2322 against an owner of a building, a plaintiff must prove that the building posed an unreasonable risk of injury to others and that he was damaged by virtue of this risk. Entrevia v. Hood, 427 So.2d 1146 (La.1983).
La.C.C. article 2695 also provides for a strict liability cause of action against a lessor. However, "the strict liability prescribed by this article will only be imposed if the injured lessee first establishes the accident was proximately caused by a vice or defect in the premises." Jameson v. Employers Insurance of Wausau, 286 So.2d 785, 787 (La.App. 4th Cir.1973).
*619 Plaintiffs claimed that the failure to provide smoke and/or fire alarms was a defect in the building. The plaintiffs also argued that fire stops should have been placed in the building when it was renovated in the mid-1970's. However, the testimony of the defendants' experts established that the fire occurred so quickly that smoke and fire alarms would not have reduced the damages sustained by plaintiffs. In addition, the experts stated that fire stops would not have saved any of the plaintiffs' belongings. The experts concluded that the fire blew out the front windows of the hardware store and entered the second floor of the building through the second floor windows. The evidence is clear that neither fire alarms, smoke alarms nor fire stops would have prevented the fire or reduced the damage done to the building and the contents therein. Under these circumstances, we conclude the trial judge properly exonerated the Lebon family from liability for plaintiffs' losses.
Plaintiffs further claim that the amount of the awards made by the trial judge are inadequate. We reject these contentions. The trial judge awarded the Browns $18,920.00 in property damages as testified to by them. He also awarded to them $10,000.00 total in damages for mental anguish. Sammie Lott and her son, Christopher Bairnsfather, estimated their damages to be over $70,000.00. However, it was apparent on cross-examination that Ms. Lott over-valued some of her belongings. The trial judge properly awarded them $58,626.00 for their property damage. The judge further awarded $5,000.00 each to Ms. Lott for herself and her son. Susan Pecoul, owner of the shop in the adjacent building, estimated that the damage to her business amounted to $12,633.00. We cannot say that the reduced amount awarded by the trial judge in the sum of $8,633.00, based on the evidence, was error.
An appellate court may disturb a damage award on appeal only where an abuse of discretion is apparent on the record. Only after making the finding that the record supports a conclusion that the trial court abused its discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion of the court. Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976). Based on the evidence and considering the amount of the awards, we cannot say the trial judge abused his much discretion either in his determination of the amount of the property losses or in the amount of the mental anguish judgments.
However, Melissa Brown points out that the trial judge failed to award to her minor son, Robert, damages for his mental anguish. Ms. Brown testified that her son "Robbie" was seven years of age at the time of the fire. He was sleeping when the fire started; however Ms. Brown awakened the child and took him downstairs. Ms. Brown testified that on occasions subsequent to the fire "Robbie" experienced nightmares and underwent counselling. She stated further that "Robbie" continues to become upset when the fire is discussed. Based on this evidence, we conclude the trial judge either overlooked or failed to award Robert John Kauke III damages for mental anguish. Accordingly, we hold that an award in the amount of $5,000.00, as determined by the trial judge for other damaged parties, is proper.
Plaintiffs also argue that costs of the litigation should not have been assessed against them. La.C.C.P. article 1920 provides:
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
In Bowman v. New Orleans Public Service, Inc., 410 So.2d 270 (La.App. 4th Cir.1982), this court recognized the longstanding general rule that all costs are to be paid by the party cast in judgment, except where "equity" dictates otherwise, as where the prevailing party causes frivolous expenses. The court stated that "[t]he underlying principle of Code and jurisprudence is that the party whose behavior unjustifiably causes costs to be incurred ought to pay them." Bowman, at 272. "Such a proposition does not translate *620 `equity' to mean `he pays who can best afford it.'" Busalacchi v. Vogel, 429 So.2d 217 (La.App. 4th Cir.1983).
We find no error in the assessment of costs as determined by the trial judge.
Accordingly, we affirm the judgment granting the directed verdicts. We further affirm the amount of the damage awards. The judgment is amended to provide $5,000.00 to Melissa Brown, for the benefit of her minor child, Robert John Kauke III. As amended the judgment is affirmed.
AMENDED, AS AMENDED AFFIRMED.
NOTES
[1] Three lawsuits were filed in the trial court. The Lott group filed suit against Marquette, Aetna, the Lebons and First Financial Insurance Company. The Lebons' fire insurer, Constitution State Insurance Company filed suit against the hardware store owner, Marquette and Aetna. This suit was voluntarily dismissed prior to trial. Marquette sued the Lebons and their insurer, First Financial Insurance Company.