863 So.2d 675 (2003)
Laura E. TRUNK
v.
MEDICAL CENTER OF LOUISIANA AT NEW ORLEANS, State of Louisiana, Louisiana Health Care Authority, John Doe and ABC Insurance Company.
No. 2003-CA-0275.
Court of Appeal of Louisiana, Fourth Circuit.
December 17, 2003.
*678 Patrick G. Kehoe, Jr., New Orleans, LA, for Plaintiff/Appellee.
Richard P. Ieyoub, Attorney General, Rodney A. Ramsey, Assistant Attorney General, LA Dept. of Justice, Litigation Division, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge DAVID S. GORBATY, Judge EDWIN A. LOMBARD).
EDWIN A. LOMBARD, Judge.

FACTS AND PROCEDURAL HISTORY
This is a slip-and-fall personal injury case. The accident occurred on January 31, 1996. As Laura Trunk ("Plaintiff") exited a conference room located on the third floor of the Medical Center of Louisiana at New Orleans ("Defendant"), she slipped on a foreign substance and injured her wrist. As a result of the fall the plaintiff suffered tendon and ligament injuries that required arthroscopic surgery.
At the time of the accident the plaintiff was completing her residency in Internal Medicine. Upon completion of her residency, the plaintiff had planned to specialize in Gastroenterology. This position would require extensive use of the hands and wrist in performing examinations and surgical procedures.
Plaintiff filed suit on January 30, 1997 and named the Medical Center of Louisiana as a defendant. Prior to trial both the defendant and the plaintiff filed motions for directed verdict on the issue of liability. The trial judge granted plaintiff's motion, but denied defendant's motion.
Subsequently, on April 3,4 and 8-12, 2002, a jury trial was held on the issue of damages. The jury returned a verdict in favor of the plaintiff in the amount of $35,000 in general damages and $17,901.79 for past medicals. The total amount awarded was $52,901.79. The jury made no award for mental pain and anguish, permanent disability, future medical and future lost of earning capacity.
Plaintiff moved for judgment notwithstanding the verdict ("JNOV"). The trial judge granted plaintiff's JNOV and increased the jury award to $250,000 general damages (including pain and suffering), $40,000 past and future medical expenses and $500,000 for future loss of earning *679 capacity. Thus, the net judgment rendered for the plaintiff pursuant to the JNOV was in the amount of $790,000.
From that judgment defendant appeals, assigning the following as error:
(1) The trial court erred in granting plaintiff's motion for directed verdict on the issue of liability.
(2) The trial court erred in granting plaintiff's motion for JNOV on the issue of damages.
(3) The trial erred in denying its motion for directed verdict on the issue of liability because the plaintiff's exclusive remedy was workers' compensation.

LAW AND ANALYSIS
ASSIGNMENT OF ERROR NUMBER ONE
By way of this assignment of error, the defendant contends the trial court erred in granting plaintiff's motion for directed verdict on the issue of liability. The defendant argues that the plaintiff must prove under Civil Code article 2315 that the floor created an unreasonable risk of harm. The defendant further submits that the plaintiff failed to prove that it owed a duty under the theory of negligence. Additionally, the defendant argues that there was no evidence introduced to establish actual or constructive notice.
The standard of review for directed verdicts is whether, viewing the evidence submitted, the appellate court concludes that reasonable people could not reach a contrary verdict. Lott v. Lebon, 96-1328 (La.App. 4 Cir. 1/15/97), 687 So.2d 612, 616. The record supports the conclusion of the trial judge compelling the granting of a motion for a directed verdict, based not on a credibility determination (a factual issue), but on a sufficiency of evidence determination (a question of law). Id. A directed verdict should be sustained on appeal where the reviewing court would find a jury verdict in favor of the party opposing the motion to be manifestly erroneous had the trial judge allowed the case to go to the jury. Wichser v. Trosclair, 99-1929 (La.App. 4 Cir. 2/28/01), 789 So.2d 24.
A motion for directed verdict under La.Code Civ. Pro. art. 1810 is properly granted if in viewing the facts in the light most favorable to the adverse party, the trial court concludes that the evidence is such that reasonable, fair-minded jurors cannot arrive at a verdict in favor of the non-moving party. Lozano v. Touro Infirmary, 99-2587 (La.App. 4 Cir. 12/13/00), 778 So.2d 604, 607, writ denied, XXXX-XXXX (La.5/11/01), 792 So.2d 733. If there is substantial evidence opposed to the motion, i.e., evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case should be submitted to the jury. Lott v. Lebon, 96-1328 (La.App. 4 Cir. 1/15/97), 687 So.2d 612, 616, writ denied, 97-0359 (La.3/21/97), 691 So.2d 92, and writ denied 97-0414 (La.3/21/97), 691 So.2d 95; Walker v. Louisiana Health Management Co., 94-1396, p. 8 (La.App. 1 Cir. 12/15/95), 666 So.2d 415, 421, writ denied, 96-0571 (La.4/19/96), 671 So.2d 922.
A directed verdict is appropriate only when the evidence overwhelmingly points to one conclusion. Hebert v. BellSouth Telecommunications, Inc., 01-00223 (La.App. 3 Cir. 6/6/01), 787 So.2d 614. A motion for a directed verdict is a procedural device available in jury trials with an eye toward judicial economy. Reed v. Columbia/HCA Information Systems, Inc., XXXX-XXXX (La.App. 5 Cir. 4/11/01), 786 *680 So.2d 142, writ denied XXXX-XXXX (La.6/22/01), 794 So.2d 796.
The trial court has much discretion in deciding whether to grant or deny the motion for directed verdict. Brockman v. Salt Lake Farm Partnership, 33,938 (La.App. 2 Cir. 10/4/00), 768 So.2d 836, writ denied XXXX-XXXX (La.12/15/00), 777 So.2d 1234; Delaney v. Whitney Nat. Bank, 96-2144 (La.App. 4 Cir. 11/12/97), 703 So.2d 709, writ denied 98-0123 (La.3/20/98), 715 So.2d 1211. A motion for directed verdict may be granted when, after considering all evidentiary inferences in the light most favorable to the mover's opponent, it is clear that the facts and inferences are so overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict. Burris v. Wal-Mart Stores, Inc., 94-0921 (La.App. 1 Cir. 3/3/95), 652 So.2d 558.
After a thorough review of the record, we cannot say that the trial judge abused his discretion with regard to the granting of the motion for directed verdict. Thus, this assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER TWO
In this assignment of error, the defendant contends that the trial court erred in granting plaintiff's motion for JNOV on the issue of damages. It argues that the jury award of $35,000 for pain and suffering was adequate and not unreasonable or abusively low to require an increase in the award. Additionally, the defendant contends that the plaintiff failed to present sufficient credible testimony to support any award for future medical expenses or future loss of earning capacity. Thus, the defendant argues, the plaintiff is not entitled to such damages.
The plaintiff answers the appeal and contends that the "jury's verdict was so abusively low as to shock the conscience of any objective arbiter." She argues that the jury failed to appreciate the severity of her injury and failed to properly apply the facts and law in arriving at its decisions. We agree.
In ruling on a motion for JNOV under La.Code Civ.P. art. 1811, the trial court is required to employ the following legal standard: A JNOV should only be granted if the trial court, after considering all of the evidence in the light most favorable to the party opposed to the motion, finds it points so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict on the issue. However, if there is substantial evidence of such quality and weight that reasonable persons might reach different conclusions, the motion must be denied. Boeing Company v. Shipman, 411 F.2d 365, 374 (5th Cir.1969); Cosie v. Aetna Casualty & Surety Insurance Co., 527 So.2d 1105, 1107 (La.App. 1st Cir.1988); Robertson v. Penn, 472 So.2d 927, 929 (La.App. 1st Cir.), writ denied, 476 So.2d 353 (La.1985). On appeal, the findings of the jury are reviewed under this standard. Woods v. Sammisa Company, Ltd., 873 F.2d 842, 846 (5th Cir.1989), cert. denied, 493 U.S. 1050, 110 S.Ct. 853, 107 L.Ed.2d 847 (1990). The trial judge's action in granting a JNOV, thereby altering the factual finding of the jury, is governed by the manifest error or abuse of discretion standards. See Cosie v. Aetna Casualty & Surety Insurance Co., 527 So.2d at 1107 (employing a manifest error test); Robinson v. Bump, 894 F.2d 758 (5th Cir.1990) (employing an abuse of discretion test).
A JNOV is proper only where the trial judge concludes the verdict is one reasonable people could not have reached.
*681 Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 at 832 (La.1991); Lilly v. Allstate Insurance Company, 577 So.2d 80, 83 (La.App. 1st Cir.1990), writ denied, 578 So.2d 914 (La.1991). In applying this standard, the court cannot weigh the evidence, pass on the credibility of the witnesses, or substitute its judgment of the facts for that of the jury. Barnes v. Thames, 578 So.2d at 1169.
In reviewing the trial judge's decision to grant plaintiff's motion for JNOV on the issue of damages, we conclude that the motion was properly granted.
Having found the motion for JNOV was correctly granted, we must determine whether the trial court abused its vast discretion in its de novo award of damages.
A JNOV is a procedurally correct device for raising an unreasonable damage award. Orgeron v. Prescott, 93-926 (La.App. 5th Cir.4/14/94), 636 So.2d 1033, 1040, writ denied, 94-1895 (La.10/28/94), 644 So.2d 654; Verret v. Carline, 93-0508 (La.App. 1st Cir.3/11/94), 634 So.2d 37, 39, writ denied, 94-0842 (La.5/13/94), 637 So.2d 1070. When a trial court determines a JNOV is warranted because reasonable persons could not differ that the award was abusively low, it must determine the proper amount of damages. In making this determination, the trial court is not bound by the constraints imposed on appellate courts of raising the award to the lowest point reasonably within the discretion afforded that court. Instead, it should render a de novo award based on its independent assessment of damages. Anderson v. New Orleans Public Service, Inc., 583 So.2d at 833-34; Verret v. Carline, 634 So.2d at 39.
Plaintiff's treating physician, Dr. Harold Stokes, testified that plaintiff had a scapholunate disruption, which are tears in the ligaments in the wrist. As a result, Dr. Stokes preformed arthroscopic surgery on plaintiff's wrist. He also performed a left carpal tunnel release, to alleviate the pressure on the nerve that was causing continuous inflammation and swelling of the wrist joint.
After the surgery, plaintiff continued to suffer from impingement on the nerve in her wrist that was caused by scarring, and unstable range of motion the cartilage in the wrist. Dr. Stokes testified that the plaintiff still has significant complaints of pain and needed future surgery. However, if she does have wrist fusion surgery, she will sustain about a 15% to 25% permanent partial impairment rating of the upper extremity of her wrist.
Defendant's orthopedic surgeon, Dr. Donald Faust, performed an independent medical examination of plaintiff. His report indicated that after surgery plaintiff's condition had become worse.
Moreover, testimony at trial established that plaintiff's desire to be a Gastroenterology specialist was severely impaired by her injuries. Dr. Nicolas Persich, an expert in the field of Gastroenterology, testified that plaintiff would have a difficult time being effective as a Gastroenterologist. He indicated that plaintiff would be required to have a certain amount of grip strength to utilize the tools of the trade. Likewise, Dr. Dayton Daberknow, an expert in Internal Medicine, testified that plaintiff's loss of motion, strength, and physical pain, will impair her ability to perform Internal Medicine procedures. Defendant's expert, health economist, Dr. Hugh Long, also agreed that the plaintiff suffered a substantial loss of future income if she could not practice s a Gastroenterologist. He testified that plaintiff's loss of future income under that circumstance would be estimated at $1.3 million. Plaintiff's economist *682 calculated the loss to be $541,549 less than even a general internist would normally earn.
General damages involve physical and mental pain and suffering, inconvenience, loss of intellectual gratification or physical enjoyment, and other factors that affect the victim's life. Delphen v. Department of Transp. and Development (La.App. 4 Cir. 5/24/95), 657 So.2d 328, writ denied, 95-2116 (La.11/17/95), 663 So.2d 716, and writ denied, 95-2124 (La.11/17/95), 663 So.2d 717. The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific. The standard of review for damage awards requires a showing that the trier of fact abused the great discretion accorded in awarding damages. In effect, the award must be so high or so low in proportion to the injury that it "shocks the conscience." Moore v. Healthcare Elmwood, Inc., 582 So.2d 871 (La.App. 5 Cir.1991).
The law is clear that a claim for the loss of earnings need not be proven with mathematical certainty, but only by such proof as reasonably establishes plaintiff's claim. Veazey v. State Farm Mut. Auto Ins., 587 So.2d 5 (La.App. 3 Cir. 1991). The trial court should thus ask itself what plaintiff might be able to have earned but for his injuries and what he may now earn given his resulting condition. Pierce v. Milford, 688 So.2d 1093, 1095 (La.App. 3rd Cir.1996), citing Finnie v. Vallee, 620 So.2d 897.
Likewise, future medicals need not be established with mathematical certainty although a plaintiff must prove that it is more probable than not that expenses will be incurred. Cooper v. Liberty Mut. Ins. Co., 96-1522 (La.App. 4th Cir.8/20/97), 699 So.2d 115. Although a plaintiff is not required to prove the exact value of the necessary expenses, some evidence to support the award must be contained in the record. Turner v. Pelican, 94-1926 (La.App. 4th Cir.9/15/96), 661 So.2d 1065, writ denied, 95-2513 (La.12/15/95), 664 So.2d 441, quoting Dixon v. Winn-Dixie Louisiana, Inc., 93-1627 (La.App. 4th Cir.5/17/94), 638 So.2d 306. If the fact finder can determine from past medical expenses or other evidence a minimal amount that reasonable minds could agree upon, then an award is proper. Id.
In the present case, given the particular injuries and damages suffered by Laura Trunk, as corroborated by her treating physicians, it is clear that the damage award of the trial court was within its broad discretion. We find no clear abuse of discretion in the trial court's judgment. The award was not so high as to shock the conscience. The trial court did not abuse its discretion in the amount of damages awarded.
ASSIGNMENT OF ERROR THREE
Finally, in this assignment of error the defendant complains that the trial court erred in denying its motion for directed verdict on the issue of liability. Specifically, the defendant argues that the plaintiff, a medical student, was an employee of the Medical Center of Louisiana. According to the defendant, the plaintiff's exclusive remedy was in workers' compensation. The defendant contends that the hospital had direct right of control over plaintiff; paid direct and indirect costs to have residents and medical students from LSU at the hospital to provide patient care; had final authority in all disciplinary matters; and provided the plaintiff with equipment for the treatment of the patients. Thus, the defendant concludes that the plaintiff was a borrowed employee of the hospital and the trial court should have dismissed plaintiff's lawsuit.
*683 Under the Louisiana Workers' Compensation Act, an employee injured in an accident while in the course and scope of employment is generally limited to the recovery of workers' compensation benefits as his exclusive remedy against his employer. La. R.S. 23:1032(A)(1)(a); Hill v. West American Insurance Company, 93-915, 93-932, p. 5 (La.App. 3rd Cir.3/2/94); 635 So.2d 1165, 1169, writ denied, 94-1630 (La.9/30/94), 642 So.2d 881.
The issue of whether a borrowed servant relationship exists is a matter of law for the court to determine. Fanguy v. Dupre Brothers Construction Company, Inc., 588 So.2d 1251, 1257 (La. App. 1st Cir.1991), writ denied, 594 So.2d 892 (La.1992). However, there are numerous factual inquiries underlying "borrowed employee" status and the trial court's factual findings will not be upset unless they are clearly erroneous. Fanguy, 588 So.2d at 1257. There is no fixed test, nor is the existence of a contract or any other single factor determinative; however, the following must be considered in determining the existence of a borrowed employee relationship: right of control; selection of employees; payment of wages; power of dismissal; relinquishment of control by general employer; which employer's work was being performed at the time in question; agreement, either implicit or explicit, between the borrowing and lending employer; furnishing of instructions and place for performance of the work in question; length of employment; and acquiescence by the employee in the new work situation. Walters v. Metropolitan Erection Company, 94-0162, 94-0475, p. 4-5 (La.App. 4th Cir.10/27/94); 644 So.2d 1143, 1146, writs denied, 94-2858 and 94-2870 (La.2/9/95); 649 So.2d 420.
Implicit in maintaining a borrowed employee relationship is the existence of an employment relationship between an employee, in this case, plaintiff, and a general or lending employer, in this case, Medical Center of Louisiana. As a general rule, for an employer-employee relationship to exist, there must be a contract of employment, either express or implied, whereby services are furnished in anticipation of compensation. Genusa v. Pointe Coupee Volunteer Fire District No. 4, 93-2214, p. 3 (La.App. 1st Cir.10/7/94); 644 So.2d 851, 852.
Here, we find that the record is completely devoid of any evidence establishing the existence of an employer-employee relationship between plaintiff and the defendant. The record clearly shows that plaintiff was a student and therefore did not render services to the defendant in anticipation of compensation. In fact, the defendant admitted in its brief that plaintiff "... did not receive any monetary compensation." Because there exists no employment relationship between plaintiff and the defendant, plaintiff cannot be an "employee" borrowed by the defendant. Accordingly, the trial court did not err in denying the defendant's motion for directed verdict because plaintiff was a borrowed employee whose exclusive remedy is workers' compensation.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.