LEDET, J.,
DISSENTS WITH REASONS '
[because I would amend and affirm as amended the trial court’s judgment, I dissent from the majority’s decisión to reverse and to remand for a new trial. In support of its decision to remand, the majority finds the trial court committed the following three legal errors: (i) denying Plaintiffs’, pre-trial motion in limine tp exclude evidence of passive income; (ii) granting Defendants’ motion for a partial directed verdict on future medical expenses; and (iii) failing “to advise the jury that Ms. Levy could be compensated for the full extent of her past medical expenses incurred in good faith.” The majority acknowledges that none of these three errors alone would be sufficient to warrant a remand for a new trial. Taken together, however, the majority finds that these three errors are not harmless'and thus warrant reversing and remanding for a new trial. I disagree.
My dissent has two parts. Part one explains my disagreement with the majority’s finding of three legal errors warranting a reversal and a remand, for a new-trial. Part two explains why I would amend and affirm as' amended the trial court’s judgment. ’
I.
As noted, the majority finds the trial court legally erred in three respe'cts. I separately address each alleged error.
|¾ Motion in limine as to passive income
Pre-trial, Plaintiffs filed a motion in li-mine seeking to exclude, ampng other *1164 things, reference at trial to “Darlene Levy’s real estate holdings, stock holdings, including any income or revenue of any kind relating to plaintiffs other business interests or wealth.” Following a hearing, the trial court denied the motion in limine as to these matters, which the Plaintiffs later labeled as “passive income.” At the hearing, the trial court concluded that Defendants were entitled to “use [Ms. Levy’s] other sources of income,” but admonished Defendants that it did. not want them “to reference her wealth.” In its December 1, 2015 written reasons for judgment, the trial court reasoned as follows:
' Ms. Levy is seeking to recover significant damages for lost wages/income, both past and future. Trial is scheduled to take place on January 19, 2016, and thus far, the only evidence plaintiffs have provided in support of their claims for economic loss are income tax returns and the report of plaintiffs’ expert, Shael N. Wolfson, Ph.D. Defendants have repeatedly sought additional documentation in support of the plaintiffs’ claims for lost income but have been unsuccessful in their efforts.
Relevant evidence is “any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Louisiana Code of Evidence art. 401. Generally, all relevant evidence is admissible at trial. Louisiana Code of Evidence art. 402.
The basis of a claim for loss of income in a delictual action is not limited to a comparison of what the plaintiff earned before the incident and what the plaintiff earned after the incident. Rather, loss of earning capacity is the basis for assessing loss of wages. Folse v. Fakouri, 371 So.2d 1120 (La. 1979). The Louisiana Fourth Circuit has expounded on this theme [in ... Finnie v. Vallee, 620 So.2d 897, 900-01 (La. App. 4 Cir. 1993)].[1]
|sThis Court believes that Ms. Levy’s ability to earn income from other businesses may be probative of the extent to which the accident sued upon affected her loss of earning capacity. Therefore, plaintiffs’ motion in limine is denied.
From this interlocutory ruling, Plaintiffs filed an application for supervisory writ. On January 15, 2016, a divided panel of this court denied the writ insofar as it sought review of the trial court’s denial of Plaintiffs’ “motion in limine to exclude evidence of her [Ms. Levy’s] passive or unearned income.” Levy v. Lewis, 15-1303 (La. App. 4 Cir. 1/15/16) (unpub.).[2] The *1165 Louisiana Supreme Court likewise denied Plaintiffs’ writ application. Levy v. Lewis, 16-0121 (La. 1/20/16), 182 So.3d 965.[3]
On appeal, Plaintiffs once again contend that the trial court erred in denying the motion in limine to exclude reference to passive income. Defendants counter that the prior writ denial is law of the case. Although I agree with the majority’s holding that the prior writ denial is not law of the case, I disagree with its holding that the trial court erred in denying the motion in limine.
A trial court’s ruling on a motion in limine is reviewed under an abuse of discretion standard. See Joseph v. Williams, 12-0675, p. 10 (La.App. 4 Cir. 11/14/12), 105 So.3d 207, 214 (noting that “[tjhis court reviews evidentiary issues, such as rulings on a motion in limine and exclusion of evidence, under an abuse of discretion standard.”). A motion in limine is a judicial construct—“a motion which |4is not provided for by our Codes, but has come into being by trial practice.” Lenard v. Dilley, 01-1522, p. 8 (La. 1/15/02), 805 So.2d 175, 181 (Kimball, J., concurring). Moreover, a motion in limine is an interlocutory ruling that “can be changed by the trial court during the course of trial, and often reach[es] this court without a developed record upon which to review the trial court’s decision.” Id.
In finding the trial court erred in denying the motion in limine, the majority distinguishes between a lost wages claim and a loss of earning capacity claim. Legally, this is a valid distinction; “[l]oss of earning capacity is not the same as lost wages.” Finnie, 620 So.2d at 900. Factually, Plaintiffs contend that they are asserting solely a lost wages claim. To illustrate, in their proposed jury instruction, which the trial court declined to give, Plaintiffs state:
Plaintiffs personal wealth and passive or unearned income are not relevant to her claim for wage losses. She does not contend that her passive or unearned income from her investments has been impacted by the injuries she suffered in the accident. Her claim is, solely, a claim for wage loss; specifically the wages she has been unable to earn through her labor.
Accepting Plaintiffs’ categorization of their claim as solely a lost wages claim, the majority states that “Plaintiffs’ loss of wage claim arose exclusively from Ms. Levy’s ability to earn wages as an attorney.” Given this categorization, the majority rejects as unpersuasive the trial court’s reasoning that “Ms. Levy’s ability to earn income from other businesses may be probative of the extent to which the accident sued upon affected her loss of earning capacity.” The majority’s premise—that Plaintiffs’ claim is limited to a lost wages claims—is not supported by the record. Indeed, Plaintiffs expressly plead in their petition that both Ms. Levy and her law firm are seeking to recover for her loss of earning capacity.[4] This case thus involves not only a claim for lost wages, but also a claim for loss of earning capacity.
| ^Moreover, Ms. Levy’s lost income claim, as Defendants point out, is based upon her allegations that she is not as active as before the accident, that she is slow to set cases for trial, and that she *1166 chooses to settle cases rather than to try them. Given Ms. Levy is not only a lawyer, but also a real estate agent with many real estate holdings and a property manager, Defendants contend that they are entitled to explore whether the accident and the alleged resulting injuries had an impact upon Ms. Levy’s abilities and dealings .with her other business pursuits. If Ms. Levy lost income in her legal practice due to her claims that her injuries from the accident have affected her ability to.practice law effectively, then Defendants contend they have a right to examine how those alleged injuries affected her other business pursuits. According to Defendants, such an inquiry is relevant in examining the basis of Plaintiffs’ economic claim. I find these contentions persuasive.
Indeed, a distinction has been drawn between “active income”—which “encompasses value, compensation, or return grounded in the performance of activity, work, business operation, etc.”—and “passive income”—which “encompasses the return or investment of capital, which involves no action or performance on the part of the investor after the act of investment.” In re Ballard, 238 B.R. 610, 627 (Bankr. M.D. La. 1999). Making the distinction here, -the income Ms. Levy makes from her non-legal business pursuits as a real estate broker and a property manager is not necessarily passive income. Stated differently, her other sources of income are not akin to interest on certificates of deposit or dividends on corporate stock, which require no degree of “no action or performance on the part of the investor.” id. Rather, her other sources of income may include a decree of return grounded in her performance of “activity, work, business operation, etc.” Id. At a minimum, a factual dispute was presented pretrial regarding the passive versus active nature of her other sources of income. The | ^existence of this factual dispute supports the trial court’s denial of the motion in limine to exclude reference to income from Ms. Levy’s other business interests.
Finally, contrary to the majority’s suggestion, the trial court’s pretrial ruling denying Plaintiffs’ motion in limine neither dictated that Plaintiffs introduce Ms. Levy’s tax returns evincing her passive income, nor precluded them from redacting the prejudicial information from those tax returns.' To the contrary, the Plaintiffs opted to introduce Ms. Levy’s tax returns to support their multi-million dollar claim for loss income in Ms. Levy’s legal business. Moreover, as Defendants suggest, by making such a substantial economic loss claim, ■ Plaintiffs put at issue Ms. Levy’s ability to earn income in her other, nón-legal business pursuits. For all these reasons, I cannot conclude that the trial court abused its discretion in denying Plaintiffs’ motion in limine to exclude reference to income from Ms. Levy’s other business interests.

Partial directed verdict as to future medical expenses

The next legal error the majority cites is the trial court’s ruling granting Defendants’ motion for a partial directed verdict on Ms. Levy’s claim for future medical expenses. As this court has noted, “the standard of review for directed verdicts is whether, viewing the evidence submitted, the appellate court concludes that reasonable people could not reach a contrary verdict.” Lott v. Lebon, 96-1328, 96-1329, p. 4 (La.App. 4 Cir. 1/15/97), 687 So.2d 612, 616. A directed verdict should be sustained on appeal when the reviewing court “would find a 'jury verdict in favor of-the party opposing the motion to be manifestly erroneous had the trial judge allowed the case to go to the jury.”’ Wichser v. Trosclair, 1999-1929, 99-1930, p. 6 (La.App. 4 Cir. 2/28/01), 789 So.2d 24, 27. A directed verdict must be reviewed in the light of the applicable substantive law governing the *1167 nonmoving party’s claim. See Everhardt v. Louisiana Dep’t of Transp. & Dev., 07-0981, p. 14 (La.App. 4 Cir. 2/20/08), 978 So.2d 1036, 1047.
17The applicable substantive law in this case is the law governing an award of future medical expenses to a tort victim. An award of future medical expenses requires “medical testimony that they are indicated and setting out their probable cost.” Duncan v. Kansas City Southern Railway Co., 00-0066, p. 17 (La. 10/30/00), 773 So.2d 670, 685. “Importantly, future medical expenses must be established with some degree of certainty.” Menard v. Lafayette Ins. Co., 09-1869, p. 13 (La. 3/16/10), 31 So.3d 996, 1006. The record must contain some evidence to support such an award. Molony v. USAA Property and Casualty Ins. Co., 97-1836, pp. 2-3 (La.App. 4 Cir. 3/4/98), 708 So.2d 1220, 1221.
Granting Defendants’ motion for a partial directed verdict, the trial court reasoned that Plaintiffs failed to give “some idea of what [future care] costs.” Finding the trial court legally erred, the majority cites Dr. Murphy’s testimony that Ms. Levy will be “treating with him indefinitely.” The majority notes that Ms. Levy began seeing Dr. Murphy shortly after the accident, that Ms. Levy originally saw him on a monthly basis, and that in the year before trial she only saw him five times. The majority emphasizes that Plaintiffs introduced into the record Dr. Murphy’s medical records, which include three pages of billing statements from May 19, 2011, through December 16, 2015, Those billing statements reflect a total bill of $4,165 and encompass forty office visits. The majority finds this sufficient evidence from which the jury could extrapolate a future medical expenses award.
The majority essentially adopts Plaintiffs’ counsel’s argument before the trial court in opposing the motion for directed verdict, which was as follows:
There definitely was testimony from Dr. Murphy on future prognosis. His recommendation is that Mr. Levy continue to treat with him like she has over the past five years or so. I think that the jury can easily put a number on that because it’s essentially the same thing with him that has been happening for the past five years.
The narrow issue presented is whether the trial court erred in finding that reasonable persons could not have reached a verdict in Ms. Levy’s favor for future I «medical expenses related to her continuing treatment with Dr. Murphy. The record is devoid of an estimate or suggestion of how often such future treatment would be needed and what the cost of such future treatment would be. I disagree with the majority’s finding that Dr. Murphy’s testimony coupled with his three-page billing summary can serve that purpose. Dr. Murphy provided ho estimate as to how often in the future he, or someone else, would see Ms. Levy; instead, Dr. Murphy’s testimony was simply that Ms. Levy will “be seeing somebody indefinitely probably.” Nor could Dr. Murphy testify what his total medical bills to date were for Ms. Levy. The only evidence of the amount of Dr. Murphy’s past medical bills was provided in the form of the three pages of billing statements, which covered a five-year period, forty office visits, and totaled $4,165. Given the evidence presented at trial by Plaintiffs on this issue, I cannot conclude that the trial court legally erred in granting a partial directed verdict on this issue.
Regardless, even assuming the trial court, as the majority holds, erred in granting á directéd verdict oh future medical expenses, this is not a ground for a remand for a new trial. Indeed, the Louisi *1168 ana Supreme Court has held that an appellate court, in this context, should fix such an award based on the complete record before it. See Stiles v. K Mart Corp., 597 So.2d 1012, 1013 (La. 1992) (remanding to the court of appeal “to fix an award for future medical expenses which the medical evidence established that plaintiff, more probably than not, will be required to incur.”). The proper remedy would be to amend the judgment to award a reasonable sum of future medical expenses. Thus, the trial court’s ruling granting a partial directed verdict on future medical expenses, even if procedurally[5]1 sor substantively erroneous, is not a valid basis for remanding this matter for a new trial.

Jury instruction as to past medical expenses award

The third and final legal error the majority cites is the tidal court’s failure to instruct the jury on the law regarding past medical expenses incurred in good faith. The majority, however, fails to cite any authority, nor could I find any, requiring a jury be instructed on the law regarding recovery of past medical expenses incurred in good faith. This law is simply a jurisprudential principle. See Watson v. Hicks, 15-0046-48, p. 26 (La.App. 4 Cir. 5/27/15), 172 So.3d 655, 675 (holding that “[a] tortfeasor is required to pay the expenses of over treatment or unnecessary medical treatment, ‘unless such treatment was incurred by the victim in bad faith.’ ”). Regardless, Plaintiffs did not raise this issue either in the trial court or in their appellate brief to this court. It is thus inappropriate for us to consider this alleged error as a basis for reversing the trial court’s judgment and remanding for a new trial.
II.
By way of background, I briefly summarize the procedural history of this case. Pre-trial, a motion for partial summary judgment was granted in favor of Plaintiffs—Ms. Levy and her law firm, Darlene M. Jacobs, A Profession Law Corporation—and against Defendants—Ms. Lewis and her employer, Steakhouse New Orleans, L.L.C. Ms. Levy was found free from fault; Ms. Lewis was found solely at fault. Although summary judgment was granted on liability, Defendants’ right to challenge medical causation at trial was reserved. Also pre-trial, several motions in limine were denied, including, as discussed earlier, Plaintiffs’ motion to exclude evidence regarding income from endeavors other than Ms. Levy’s law practice. Progressive, Ms. Levy’s uninsured or underin-sured insurer, also filed a motion for partial summary judgment on Plaintiffs’ bad faith claim. The trial court Imgranted that motion, dismissing the bad faith claim with prejudice. This court granted Plaintiffs’ writ application, in part, “only to amend' the judgment to be a dismissal without prejudice.” Levy v. Lewis, 15-1303 (La. App. 4 Cir. 1/15/16) (unpub.).
A nine-day jury trial was held on the issues of medical causation and the quantum of Plaintiffs’ damage claims. Plaintiffs alleged a significant injury that severely impacted Ms. Levy’s ability to earn a living as a lawyer; Defendants countered that this was a low impact collision that resulted in Ms. Levy sustaining an aggravation of her preexisting conditions and no lost wages or loss of earning capacity. The jury determined that the accident caused Plaintiffs to suffer a total of $61,500 in *1169 damages, and the trial court rendered judgment in accord with the jury’s verdict. Unlike the majority, I would affirm that judgment in all but two respects; I would amend the judgment to award all of Ms. Levy’s past medical expenses and to award Progressive the medical payment it made to Ms. Levy. I separately address each of those two issues.

Past medical expenses

At trial, Defendants stipulated that Ms. Levy incurred a total of $44,829 in past medical expenses; however, the jury only awarded $14,000 of those expenses. Although Defendants challenged the extent of Ms. Levy’s injuries, they failed to provide any evidence that the past treatment she received was for injuries not causally related to the accident. Stated otherwise, Defendants failed to introduce any evidence to establish that any of Ms. Levy’s past medical expenses were for treatment of an unrelated condition or were incurred in bad faith. As noted earlier, “[a] tortfea-sor is required to pay the expenses of over treatment or unnecessary medical treatment, ‘unless such treatment was incurred by the victim in bad faith.’ ” 11Hicks, 15-0046 at p. 26, 172 So.3d at 675. Thus, I would amend the trial court’s judgment to award all of Ms. Levy’s past medical expenses.[6]

Medical payments

In its answer to Plaintiffs’ appeal, Progressive requested that this court amend the judgment to reflect a credit or setoff for the $5,000 it paid to Ms. Levy in medical payments. I would grant Progressive’s request.
Summarizing, rather than reverse and remand, I would amend the trial court’s judgment in the following two respects: (i) increase the'past medical expenses award from $14,000 to $44,829; and (ii) award a credit or setoff of $5,000 in favor of Progressive for its medical payments. As amended, I would affirm the trial court’s judgment. For these reasons, I respectfully dissent.

. Quoting the Finnie case, the trial court stated:
• Loss of earning capacity is not the same as lost wages. Rather, earning capacity refers to a person’s potential. Earning capacity is not necessarily determined by actual loss. While the plaintiff’s earnings at the time of the accident may be relevant, such figures are not necessarily indicative of his past or future lost earning capacity. The plaintiff need not be working or even in a certain profession to recover this type of award. What is being compensated is the plaintiff’s lost ability to earn a certain amount, and he may recover such damages even though he may never have seen fit to take advantage of that capacity. Hobgood v. Aucoin, 574 So.2d 344, 346 (La. 1990). The trial court should consider whether and how much the plaintiff’s current condition disadvantages him in the work force. The trial court should thus ask itself what the plaintiff might be able to have earned but for his injuries and what he may now earn given his resulting condition.
620 So.2d at 900-01.

. Dissenting from the writ denial, Judge Dy-sart reasoned that ‘'[i]ncome from relators’ real estate holdings and stock holdings or other passive income should not be included in a calculation of the amount of wages relator was allegedly unable to earn.” Levy v. *1165 Lewis, 15-1303 (La. App. 4 Cir. 1/15/16) (unpub.,) (Dysart, J., dissenting).

. Dissenting from the writ denial, Justice Hughes stated that he “would grant the writ for the reasons given in dissent by Judge Dysart.” Levy v. Lewis, 16-0121 (La. 1/20/16), 182 So.3d 965 (Hughes, J., dissenting).

. The petition states that Ms. Levy seeks not only "[p]ast, present, and future lost wages,” but also “[l]oss of earning capacity.” Likewise, Darleen M. Jacobs, A Professional Law Corporation seeks "[l]oss of earning capacity."

. As a commentator has noted, "[i]t is not clear whether the judge can grant a partial directed verdict, dismissing one of the plaintiffs theories of recovery or elements of damage,” 1 Frank L. Maraist, LA. CIV. L. TREATISE, CIVIL PROCEDURE § 11:8 (2d ed. 2016) (citing Hawthorne v. Southeastern Fidelity Ins. Co., 387 So.2d 26, 33 (La. App. 3d Cir. 1980)). As in Hawthorne, however, the parties do not raise this issue. We thus need not decide it.

. As to general damages, the jury’s award was broken down into the following categories: $30,000 for physical pain and suffering, past, present, and future; $10,000 for mental anguish and suffering, past, present, and future; and $7,500 for loss of life's enjoyment, past, present, and future. I would find that a review of the record supports those awards. See La. C.C. art. 2324.1 (providing that "[i]n the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury.”). Nor would I disturb the jury's finding that Plaintiffs were not entitled to an award for lost wages or loss of earning capacity.